Rena **NADOFF,** Plaintiff,

**Denise Trahan** and **Peter Arnos,** individually and on behalf of all others similarly situated, Consolidated Plaintiffs,

**Capstone Asset Management Company,** Plaintiff–Appellant,

v.

**DUANE READE, INC., Anthony J. Cuti, Gary Charboneau** and **John K. Henry,** Defendants–Appellees.

No. 03–9352.

United States Court of Appeals, Second Circuit.

Aug. 17, 2004.

Sandy A. Liebhard, New York, NY, for Plaintiff–Appellant.

Adam S. Hakki, New York, NY, for Defendants–Appellees.

Present: POOLER, SACK, and RAGGI, Circuit Judges.

### SUMMARY ORDER

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED.**

This is a class action brought pursuant to the federal securities laws. The consolidated amended complaint alleges that Duane Reade, Inc. ("Duane Reade"), which operates a large chain of drug stores in the New York metropolitan area, violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5. It is also alleged that three members of Duane Reade's management are liable for these violations pursuant to Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), as control persons of Duane Reade.

In a detailed opinion, the district court granted the defendants' motion to dismiss the consolidated amended complaint for failure to state a claim on which relief can be granted and failure to comply with applicable pleading requirements. *See In re Duane Reade Inc. Securities Litig.*, 2003 WL 22801416, No. 02 Civ. 6478(NRB) (S.D.N.Y. Nov. 25, 2003). We assume familiarity with the facts, procedural history, and specification of appellate issues, and we now affirm the district court.

The consolidated amended complaint proposes the certification of a class consisting of all purchasers of the common stock of Duane Reade between April 1, 2002 and July 24, 2002, inclusive. On April 25, 2002 Duane Reade senior management officials held a conference call with stock analysts to discuss the state of the company's performance ("the April 25th Call"). During the April 25th Call, Duane Reade announced sales results for the first quarter of 2002—which ran from January through March—and made statements concerning its expectations for the second quarter. Specifically, Duane Reade projected that it would achieve second quarter earnings of between $.40 and $.44 a share. Duane Reade also announced that "[l]ooking to the balance of the year, we have a positive outlook and remain confident in our ability to achieve our sales and earnings targets."

The gravamen of the complaint is that Duane Reade management knew at the time of the April 25th Call that it was highly unlikely that the Company could fulfill certain projections made during the Call. The complaint focuses on two aspects of Duane Reade's operations. First, it is undisputed that "front end sales"—largely toiletries and cosmetics, as opposed to sales of prescription drugs—are crucial to Duane Reade's business. During the April 25th Call, Duane Reade management stated that the first quarter of 2002 had seen an improvement in front end sales, and predicted that front end sales would be "flat" during the second quarter. The plaintiffs allege, however, that based upon daily sales reports, Duane Reade knew on April 25th that "front-end sales had materially decreased for 25 days in April (almost one third of the second quarter)."

Second, Duane Reade management announced during the April 25th Call that, as stated by the district court, "[it] had opened ten new stores during the first quarter and planned to open at least nine more during the second quarter in order to progress toward their goal of opening thirty-five new stores in 2002." The plaintiffs contend on this appeal that this was a materially false statement because Duane Reade "did not, in fact, open 10 new stores in the first quarter, but instead pushed many of those store openings, and their costs, into the second quarter."

The plaintiffs allege that Duane Reade's fraud was revealed on July 25, 2002 when Duane Reade reported that it "had missed second quarter earning projections by more than 50%, mainly as a result of decreased front end sales and higher than anticipated new store pre-opening expenses. Investors responded by selling the Company's stock in droves, causing the stock price to freefall [sic] (from $23.55 to $14.60) on dramatically high trading volume of 5.4 million shares...."

Our review of the district court's dismissal of the complaint is *de novo*. *See Rombach v. Chang*, 355 F.3d 164, 169 (2d Cir.2004). We agree with the district court's characterization of the allegedly fraudulent statements as "constitut[ing] either protected statements of opinion or accurate statements of historical fact." *In re Duane Reade Inc. Securities Litig.*, 2003 WL 22801416 at *4. Accurate statements about past performance are self evidently not actionable under the securities laws, and "expressions of puffery and corporate optimism [also] do not give rise to securities violations." *Rombach*, 355 F.3d at 174; *see also In re Bristol–Myers Squibb Securities Litig.*, 312 F.Supp.2d 549, 557 (S.D.N.Y.2004) (collecting cases). This is especially true where, as here, the allegedly fraudulent statements about future performance were accompanied with "adequate cautionary language," and not stated as guarantees. *Halperin v. eBank-*

*er USA.com, Inc.,* 295 F.3d 352, 357 (2d Cir.2002). Further, a firm has "no duty to update [such] vague statements of optimism or expressions of opinion" in light of changed circumstances. *In re Int'l Business Machines Corp. Securities Litig.,* 163 F.3d 102, 110 (2d Cir.1998).

We also agree with the district court's conclusion that the plaintiffs failed to establish the existence of an actionable motive for the alleged fraud beyond declaring that the defendants were driven by the prospect of "general corporate benefits" such as "keeping the corporation's stock price high." *In re Duane Reade Inc. Securities Litig.,* 2003 WL 22801416 at *8. Where actionable motive is not apparent, a complaint in a securities fraud action can only survive dismissal if it sufficiently alleges a degree of "reckless conduct" on the part of the defendant which amounts to "an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Kalnit v. Eichler,* 264 F.3d 131, 142 (2d Cir.2001) (citation and internal quotation marks omitted). None of the actions alleged to have been undertaken by Duane Reade suffice to meet this standard. Indeed, it is undisputed that the debt restructuring cited by the plaintiffs was fully subscribed prior to April 25, 2002. Thus, the restructuring could not have supplied a motive for the alleged misstatements.

Having concluded that the consolidated amended complaint fails to set forth a primary violation of the securities laws, the plaintiffs claims of secondary liability under Section 20(a) must be dismissed as well. *See In re Scholastic Corp. Securities Litig.,* 252 F.3d 63, 77–78 (2d Cir.2001).

Finally, the plaintiffs contend that the district court improperly held that they had not requested leave to replead the consolidated amended complaint. Even if this is true, however, we find that leave to replead should not be granted because nothing in the record suggests which another amended complaint could survive a motion to dismiss.

Accordingly, for the reasons set forth above, the judgment of the District Court is hereby **AFFIRMED.**