12-1776-cv
*Boca Raton Firefighters & Police Pension Fund v. Bahash*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 20ᵗʰ day of December, two thousand twelve.

PRESENT:

> JOSÉ A. CABRANES,
> REENA RAGGI,
> SUSAN L. CARNEY,
>
> *Circuit Judges.*

---

BOCA RATON FIREFIGHTERS AND POLICE
PENSION FUND,

        *Plaintiff-Appellant,*

v.                                                                 No. 12-1776-cv

ROBERT J. BAHASH, MCGRAW-HILL
COMPANIES, INC., HAROLD MCGRAW, III,

        *Defendants-Appellees.*

---

**FOR PLAINTIFF-APPELLANT:**        SUSAN K. ALEXANDER (Sanford Svetcov, *on the brief*), Robbins Geller Rudman & Dowd LLP, San Francisco, CA; (David J. George, Douglas Wilens, Robert J. Robbins, *on the*

1

*brief*), Robbins Geller Rudman & Dowd LLP, Boca Raton, FL; (David A. Rosenfeld, Mario Alba, Jr., *on the brief*), Robbins Geller Rudman & Dowd LLP, Melville, NY.

**FOR DEFENDANTS-APPELLEES:**    SUSAN BUCKLEY (Floyd Abrams, Tammy L. Roy, Jason M. Hall, *on the brief*), Cahill Gordon & Reindel LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Sidney H. Stein, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED**.

Plaintiff-appellant Boca Raton Firefighters and Police Pension Fund (the "Fund"), a putative class representative of similarly situated purchasers of McGraw-Hill stock between October 21, 2004 and March 11, 2008, alleges that defendants-appellees McGraw-Hill Companies, Inc., and two of its corporate officers (collectively, "McGraw-Hill") violated federal securities laws by making false and misleading statements about the operations of Standard & Poor's Ratings Services ("S&P"), a subunit of McGraw-Hill. In essence, the Fund alleges that officers of McGraw-Hill made public statements about the honesty and integrity of S&P's credit-ratings services while knowing that its ratings method was basically a sham. The Fund brought claims under Section 10(b) of the Securities Exchange Act of 1934, *see* 15 U.S.C. § 78j(b),[1] and Rule 10b-5, *see* 17 C.F.R. § 240.10b-5,[2] promulgated thereunder, and it asserted control-person liability in violation of § 20(a) of the

---

[1] 15 U.S.C. § 78j(b) provides, in relevant part, that it shall be unlawful:

> To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

[2] 17 C.F.R. § 240.10b-5 provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> > (a) To employ any device, scheme, or artifice to defraud,
> >
> > (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
> >
> > (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

Exchange Act, *see* 15 U.S.C. § 78t(a).[3] The Fund's legal theory depends not on the accuracy of the credit ratings themselves but rather on how securities-market participants would view McGraw-Hill's stock in light of the company's purportedly misleading statements about its credit-ratings services.

In an order dated March 30, 2012, the District Court dismissed the Fund's complaint under Rule 12(b)(6). The Court's analysis is succinct and worth quoting in full:

> The Complaint fails to set forth "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although plaintiffs' Complaint identifies three categories of misstatements, none are actionable. In addition, the Complaint fails to allege facts sufficient to support an inference of scienter.
>
> First, plaintiffs allege that S&P misled investors by representing that it had "market lead[ing] software," that it used "transparent and independent decision-making" to produce "independent and objective analysis," and that "excelled" in its role. (Compl. ¶¶ 253, 271, 290, 297.) These statements are mere commercial puffery. "[I]ntegrity and risk management are 'matters of great importance to investors,'" but general statements by a defendant that "it 'set the standard for best practices in risk management'" are "precisely the type of puffery" that may not undergird a Section 10b-5 claim. *In re JP Morgan Chase Sec. Litig.*, No. 02 Civ. 1282, 2007 U.S. Dist. LEXIS 22948, at *35-36 (S.D.N.Y. Mar. 28, 2007) (citations omitted), *aff'd sub nom. ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187 (2d Cir. 2009).
>
> Second, plaintiffs allege that defendants "misled the market as to the frequency and quality of its ratings surveillance" by concealing that S&P's surveillance was "perpetually late" and its surveillance group was "over-worked, under-staffed, and underfunded." (Compl. ¶ 256; *see also id.* ¶¶ 261, 270, 328.) Missing from plaintiffs' pleadings, however, are the statements that these alleged facts render misleading. Thus, this claim falls short of the PSLRA's particularity threshold, 15 U.S.C. § 78u-4(b). *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007).

---

[3] 15 U.S.C. § 78t(a) provides as follows:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable (including to the Commission in any action brought under paragraph (1) or (3) of section 78u(d) of this title), unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

Third, plaintiffs challenge McGraw-Hill's financial reports because "the overly positive statements describing those numbers were misleading in light of the concealed manner in which they were achieved." (Pls.' Opp. 14.) But plaintiffs admit that the reported earnings figures were accurate, (*see id.*), and a defendant's failure to disclose that its earnings were unsustainable is not securities fraud. *See In re Axis Capital Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 587 (S.D.N.Y. 2006).

Finally, plaintiffs have failed to allege facts that constitute "strong circumstantial evidence of conscious misbehavior or recklessness." *ECA & Local 134*, 553 F.3d at 198. Plaintiffs have not set forth facts to support the inference that either McGraw or Bahash knew of facts or had access to information that contradicted either man's statements. *See Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 196 (2d Cir. 2008).

Dist. Ct. Op. 2-3.

On appeal, the Fund contests each aspect of the District Court's opinion. With regard to the Fund's purported failure to allege actionable false or misleading statements, the Fund argues that McGraw-Hill's statements about its objectivity were not mere puffery, that it adequately pleaded misleading statements regarding McGraw-Hill's surveillance, and that McGraw-Hill's financial reports were misleading. With regard to scienter, the Fund argues that a plethora of pleaded facts supply a strong inference of scienter on the part of McGraw-Hill. We assume the parties' familiarity with the facts and procedural history of this case.

## DISCUSSION

### A.

We review *de novo* "the dismissal of a complaint under Rule 12(b)(6), accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[C]ourts must consider the complaint in its entirety," assessing "whether *all* of the facts alleged, taken collectively, give rise" to the required inferences. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007).

4

Additionally, a complaint alleging a violation of § 10(b) and Rule 10b-5 must also satisfy the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure and the rules set out in the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). *See* 15 U.S.C. § 78u-4(b); *Tellabs*, 551 U.S. at 321. Under Rule 9(b), allegations of fraud must be "state[d] with particularity." Fed. R. Civ. P. 9(b). "To satisfy this requirement the plaintiff must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 108 (2d Cir. 2012) (internal quotation marks omitted). Moreover, the PSLRA requires that "securities fraud complaints 'specify' each misleading statement; that they set forth the facts 'on which [a] belief' that a statement is misleading was 'formed'; and that they 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (quoting 15 U.S.C. § 78u-4(b)(1), (2)).

Section 10(b) "prohibit[s] the full range of ingenious devices that might be used to manipulate securities prices," but it does not reach mere "instances of corporate mismanagement." *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 477 (1977). As the Supreme Court has explained, a contrary understanding of § 10(b) would "bring within the Rule a wide variety of corporate conduct traditionally left to state regulation," thus "posing a danger of vexatious litigation which could result from a widely expanded class of plaintiffs under Rule 10b-5." *Id.* at 478-79. To prevail on their claim that McGraw-Hill violated § 10(b) and Rule 10b-5, the Fund must prove "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1317 (2011) (quotation marks omitted). At issue in this appeal are the first two of these elements.

## B.

Having reviewed the pleadings *de novo*,[4] we agree with the District Court's well-reasoned analysis, which we briefly review. The Fund identifies a variety of statements allegedly constituting

---

[4] The Fund also requests that we take judicial notice of the substance of materials recently unsealed in another case. That motion is denied, as the substance of the deposition testimony at issue is neither undisputed, nor relevant to the question at hand, which is whether the complaint presents sufficient allegations to survive a motion to dismiss. *See Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 63 n.4 (2d Cir. 2012) (explaining why, with exceptions not applicable here, matters outside the pleadings are not properly within the scope of a court's review of a motion to dismiss under Rule 12); *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70-71 (2d Cir. 1998) (testimony from another case that is not common knowledge or derived from an unimpeachable source is not properly subject to judicial notice). For the same reason, we grant McGraw-Hill's motion to strike references in the Fund's reply brief to these materials. Under the circumstances, "we see no reason to allow [the Fund] to effectively amend [its] complaint on appeal." *Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112, 117 (2d Cir. 2009).

material misrepresentations or omissions by the defendant. "The materiality of a misstatement depends on whether 'there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to [act].'" *ECA*, 553 F.3d at 197 (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988)). "In other words, in order for the misstatement to be material, 'there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.'" *Id.* (quoting *Basic Inc.*, 485 U.S. at 231-32). This inquiry is "fact-specific" and "depends on all relevant circumstances." *Id.* We have further explained:

> Because materiality is a mixed question of law and fact, in the context of a Fed. R. Civ. P. 12(b)(6) motion, a complaint may not properly be dismissed . . . on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance.

*Id.* (internal quotation marks omitted; alteration in original). However, we will not credit mere business "puffery," which we have defined in this context as "statements [that] are too general to cause a reasonable investor to rely upon them." *Id.* at 206. For instance, generalizations about a company's business practices and integrity may be "so general that a reasonable investor would not depend on [those statements]." *Id.*

The statements alleged in the Fund's complaint regarding McGraw-Hill's integrity and credibility and the objectivity of S&P's credit ratings are the type of mere "puffery" that we have previously held to be not actionable. For instance, in a conference call in October 2004 to discuss McGraw-Hill's quarterly financial results, a McGraw-Hill representative asserted that S&P's recently posted code of practices and procedures "underscores our own dedication towards transparent and independent decision-making process." App'x 136-37 (¶ 253). In another conference call in July 2006, McGraw purportedly claimed that "[t]he integrity, reliability and credibility of S&P has enabled us to compete successfully in an increasingly global and complex market, and that is true today and we are confident it will be so in the future." *Id.* at 191-92 (¶ 302).

The Fund argues that these statements are distinguishable from the "puffery" we identified in *ECA* because McGraw-Hill's statements were "directly related" to its credit-ratings service and were not "about the general integrity of McGraw-Hill as a company." Appellant's Br. 48. The "puffery" designation, however, stems from the generic, indefinite nature of the statements at issue, not their scope. *See City of Omaha, Neb. Civilian Emps.' Ret. Sys. v. CBS Corp.*, 679 F.3d 64, 67 (2d Cir. 2012) (distinguishing "matters of objective fact" from "misstatements regarding opinion" (internal quotation marks and alteration omitted)). Otherwise, we would "bring within the sweep of federal securities laws many routine representations made by investment institutions." *ECA*, 553 F.3d at

206. In short, no reasonable purchaser of McGraw-Hill common stock would view statements such as these as meaningfully altering the mix of available information about the company.

We also agree with the District Court's conclusion that the complaint's allegations with respect to McGraw-Hill's oversight and surveillance procedures "fall[ ] short of the PSLRA's particularity threshold." Dist. Ct. Op. 2 (citing 15 U.S.C. § 78u-4(b)). Indeed, the 280-page complaint consists in large part of large block quotations with italicized text, followed by a passage that reads "[t]he statements referenced in [the preceding paragraphs] were each materially false and misleading when made for the reasons set forth in ¶ 256 and the factual detail contained throughout this Complaint."[5] *See, e.g.*, App'x 147 (¶ 261); *id.* 153 (¶ 270); *id.* 162 (¶ 276); *id.* 168 (¶ 280); *id.* 179 (¶ 289). The frequently cross-referenced paragraph 256 says that the statements in three of the preceding paragraphs "were each materially false and misleading when made as they misrepresented and/or omitted adverse facts which then existed and disclosure of which was necessary to make the statements not false and/or misleading." *Id.* at 139 (¶ 256). The paragraph then provides a bullet-point list (running over a page) of "true facts, which were then known to or recklessly disregarded by each of the Defendants." *Id.* Other paragraphs use the same structure, alleging "true facts" that were "then known to or recklessly disregarded by each of the Defendants," but these paragraphs do not identify or clearly cross-reference any facts demonstrating a strong inference of scienter.

As we explained above, a complaint alleging a violation of Rule 10b-5 must (1) meet the four-part requirement[6] under Rule 9(b); (2) "set forth the facts 'on which [a] belief' that a statement is misleading was 'formed,'; and [(3)] 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Dura Pharms.*, 544 U.S. at 345 (quoting 15 U.S.C. § 78u-4(b)(1), (2)). The Fund's complaint fell far short of this standard, basically leaving the District Court to search the long quotations in the complaint for particular false statements, and then determine on its own initiative how and why the statements were false and how other facts might show a strong inference of scienter. Needless to say, asking the Court to assess the truth of facts in light of "the factual detail contained throughout this Complaint," *see, e.g.*, App'x 147 (¶ 261), does not comport with our exhortation that plaintiffs "must demonstrate with specificity why and how" each statement is materially false or misleading. *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004).

Lastly, the Fund argues that McGraw-Hill's statements about its earnings were actionable, even though literally true, because they did not acknowledge the long-term unsustainability of its

---

[5] As a preliminary matter, we note that this oft-repeated sentence is a grammatical nightmare. McGraw-Hill's statements were not "made for . . . the factual detail contained throughout this Complaint."

[6] "To satisfy [Rule 9(b)] the plaintiff must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Anschutz Corp.*, 690 F.3d at 107-08 (internal quotation marks omitted).

business model. *See* Appellant Br. 52-60. This argument is easily rejected. Whatever the scope of the responsibility not to make statements that constitute "half-truths," that surely does not apply to the reporting of unmanipulated corporate earnings. *See In re Int'l Bus. Machs. Corp. Sec. Litig.*, 163 F.3d 102, 108 (2d Cir. 1998) (noting that a report about current dividends "contain[ed] no long-term guarantee or assurance that the dividend will be paid at a specific level for a foreseeable time"). To the extent that investors might impute a positive corporate outlook from omissions in earnings reports, we have explained that general expressions of corporate optimism are "too indefinite to be actionable under the securities laws." *Id.* As the Sixth Circuit succinctly observed, "[i]t is clear that a violation of federal securities law cannot be premised upon a company's disclosure of accurate historical data." *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 401 n.3 (6th Cir. 1997).

## C.

Given the lack of actionable false or misleading statements, we need not proceed any further, though we also agree with the District Court's assessment that the complaint failed to "'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Dura Pharms.*, 544 U.S. at 345 (quoting 15 U.S.C. § 78u-4(b)(2)(A)). As it is understood in this context, scienter refers to "a mental state embracing intent to deceive, manipulate, or defraud" investors. *Matrixx Initiatives*, 131 S. Ct. at 1323 (quotation marks omitted).[7] Applying the relevant pleading standards, "we require the complaint to allege facts that give rise to a strong inference of fraudulent intent." *In re Carter-Wallace, Inc., Sec. Litig.*, 220 F.3d 36, 39 (2d Cir. 2000) (internal quotation marks omitted)).

The Fund's complaint left the District Court to determine on its own initiative how and why the other alleged facts in the 280-page complaint might show a strong inference of scienter, thus falling far short of the particularity required in fraud claims brought under § 10(b) and Rule 10b-5. This defect is especially problematic here, where the underlying theory of securities fraud vacillates within the complaint. For instance, the complaint criticizes S&P for being more focused on "pragmatic business decision[s]" than serving the interests of those who relied on its ratings, App'x 99 (¶ 172), and that its business practices reflected a "scheme to pursue market share at all costs," *id.* at 104 (¶ 181). Elsewhere, executives are alleged to have defrauded McGraw-Hill investors by acting "to the benefit of the Company." *Id.* at 112 (¶ 209). These statements would seem to negate—not support—a strong inference of intent to defraud McGraw-Hill investors.

---

[7] "In addition to intent, recklessness is a sufficiently culpable mental state for securities fraud in this circuit. . . . Recklessness is defined as 'at the least, an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" *ECA*, 553 F.3d at 198 (quoting *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000)).

8

In the end, the complaint relies on an assumption that McGraw-Hill executives were prescient, understanding not only the weaknesses of the services they were offering but also the imminent detrimental effect that those weaknesses would have on the company's stock price once the financial markets collapsed. *See, e.g.*, App'x 26 (¶ 12), *id.* at 172 (¶ 284). This is a prescience that the complaint does not adequately demonstrate. Whatever the failings of S&P's business model, the well-pleaded factual allegations do not give rise to a strong inference that McGraw-Hill executives misled investors about S&P's services in an effort to artificially inflate McGraw-Hill's stock price.

## CONCLUSION

We have considered the Fund's arguments on appeal and find them to be without merit. Accordingly, for the reasons stated above, we **AFFIRM** the judgment of the District Court.

Moreover, for the reasons stated above, the Appellant's motion for judicial notice (dated August 10, 2012) is **DENIED**, and the Appellees' motion to strike (dated August 23, 2012) is **GRANTED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk