Robert Hoffman, Individually and on Behalf of All Others Similarly Situated, Plaintiff,

against
AT & T Inc., RANDALL L. STEPHENSON, JOHN J. STEPHENS, SAMUEL A. DI PIAZZA JR., RICHARD FISHER, SCOTT T. FORD, GLENN H. HUTCHINS, WILLIAM E. KENNARD, MICHAEL B. McCALLISTER, BETH E. MOONEY, JOYCE M. ROCHÉ, MATTHEW K. ROSE, CYNTHIA B. TAYLOR, LAURA D'ANDREA TYSON, and GEOFFREY Y. YANG, Defendants.


650797/2019

Plaintiffs were represented by Nicholas Alexander Devyatkin, Tully Rinckey PLLC, 777 Third Avenue, New York, NY 10017 (646) 201-9100 ndevyatkin&commat;tullylegal.com 
and
Thomas Livezey Laughlin, 230 Park Avenue, New York, NY 10169 (212) 223-6444 tlaughlin&commat;scott-scott.com
Defendants were represented by William B. Monahan, Sullivan & Cromwell, 125 Broad Street, New York, NY 10004 (212) 558-7375 monahanw&commat;sullcrom.com.


Barry Ostrager, J.

This is a securities class action on behalf of the former shareholders of Time Warner Inc. ("Time Warner") alleging violations of the Securities Act of 1933 ("1933 Act") in connection with the June 2018 acquisition of Time Warner by AT & T, Inc. ("AT & T"). In January 2017, in order to acquire Time Warner, AT & T issued 1.185 billion shares of new AT & T stock [*2]pursuant to a Registration Statement that, plaintiff alleges, failed to disclose serious deterioration in AT & T's DirecTV and DirecTV Now business. Following antitrust litigation challenging the merger, the merger ultimately closed in June 2018. Between January 2017, when the Registration Statement became effective, and June 2018 when the merger closed, both AT & T and Time Warner stock were freely traded on the New York Stock Exchange. On February 7, 2019, New York resident Robert Hoffman initially filed this class action complaint. On April 10, 2019, the Court granted on consent a motion to designate Scott & Scott Attorneys at Law LLP and Hedin, Hall LLP as co-lead counsel for the proposed class. Subsequently, a First Amended Class Action Complaint ("FAC") was filed on May 7, 2019 together with discovery requests. Before the Court is motion 004 by all defendants to dismiss the FAC (NYSCEF Doc. No. 41).
The FAC alleges three causes of action: (1) violation of §11 of the Securities Act; (2) violation of §12(a)(2) of the Securities Act; and (3) violation of §15 of the Securities Act. Defendants move to dismiss the FAC pursuant to CPLR 3211(a)(1), (7) and (8).
Background
This action arises out of the June 2018 acquisition ("the Acquisition") of Time Warner by defendant AT & T. Plaintiff alleges that in communications leading up to the Acquisition, including the Registration Statement filed with the Securities and Exchange Commission ("SEC"), defendants made material misstatements with respect to the DirecTV Now portion of their business.
In November 2016, AT & T launched DirecTV Now ("DTVN"), an online video service that is one of three offerings in AT & T's Video Entertainment business.
On November 18, 2016, defendants filed on Form S-4 with the SEC a draft Registration Statement that would register the AT & T shares to be issued and exchanged in the Acquisition. On December 23, 2016, defendants filed an amendment to the Registration Statement. On January 5, 2017, defendants filed a final amendment to the Registration Statement. The SEC declared the Registration Statement effective on January 6, 2017.
On January 9, 2017, defendants filed a final prospectus on Form 424B3 for the AT & T shares issued and exchanged in the Acquisition (the "Prospectus"), (Registration Statement and Prospectus, collectively referred to as the "Offering Documents").
On February 15, 2017, Time Warner stockholders voted on the Acquisition. 99% of Time Warner voted shares and 78% of all outstanding Time Warner shares voted in favor of the Merger and to trade in their Time Warner shares for AT & T shares and cash upon the Merger's closing. See NYSCEF Doc. No. 82 Feb. 15, 2017 Press Release.
On June 14, 2018, over a year after the Registration Statement became effective, AT & T acquired Time Warner. In connection with the Acquisition, AT & T issued approximately 1.185 billion new shares of AT & T common stock directly to former shareholders of Time Warner common stock as follows: each former share of Time Warner common stock issued and outstanding immediately before the Acquisition was converted into the right to receive 1.43 shares of newly issued AT & T common stock plus $53.75 per share in cash. Each of these new shares of AT & T common stock was issued pursuant to the Registration Statement.
The FAC alleges that in the Registration Statement and related oral communications, defendants "touted false and misleading financial results, trends, and metrics and omitted material facts rendering those financial results, trends, and metrics materially misleading." ¶ 6. Specifically, the FAC alleges that defendants misrepresented the DirecTV Now business as an important source of strength that had added approximately 1.5 million subscribers (¶ 50) when in [*3]reality, plaintiff alleges, the DirecTV business had serious problems that directly undermined the positive representations made in the Offering Documents. In particular, the FAC alleges that AT & T's subscriber rates were reliant on aggressive internal promotions and sales commission programs that were uneconomical and that incentivized fraud, and as the defendants cracked down on the problematic promotions in the months leading up to the Acquisition, subscriptions were dropping precipitously. The FAC alleges that as these facts came to light, following the Acquisition, the value of AT & T stock decreased sharply, causing harm to shareholders. ¶ 15 — 16.
The FAC states that the alleged misstatements and omissions described constitute violations of §11, 12 and 15 of the Securities Act, which prohibit companies from issuing stock to investors by means of prospectuses or registration statements containing misleading statements and omissions. The FAC also alleges that defendants violated Item 303 of SEC Regulations S-K, 17 C.F.R. §229.303 ("Item 303"), which required disclosure of any known events or uncertainties that had caused or were reasonably likely to cause AT & T's disclosed financial information not to be indicative of future operating results, and Item 305 of SEC Regulations S-K, 17 C.F.R. §229.503 ("Item 305"), which required a discussion of the most significant factors that make the offering risky or speculative in the "Risk Factor" section of the Registration Statement. ¶ 14. Further, the FAC contends that during the period between when the Registration Statement became effective, on January 6, 2017, and when the Acquisition occurred, on June 14, 2018, defendants had an obligation to update shareholders regarding the alleged change in subscriber trends.
The Pleading Standard
The first issue the Court must address is whether plaintiff's claims are subject to the notice pleading standard under CPLR §3013, as plaintiff argues, or the heightened pleading standard under CPLR §3016(b), as defendants argue. CPLR §3016(b) states:"[w]here a cause of action or defense is based upon misrepresentation, fraud, mistake, wilful default, breach of trust or undue influence, the circumstances constituting the wrong shall be stated in detail" (emphasis added). Here, plaintiff alleges that the Offering Documents contain misrepresentations. See e.g. FAC ¶ 15 ¶ 64 ¶80 -81 ¶90 -91. Accordingly, CPLR §3016(b) applies and plaintiffs must state the circumstances constituting the misrepresentations in detail.
This motion is brought pursuant to CPLR 3211 (a)(1), based on a defense founded on documentary evidence, (a)(7), for failure to state a cause of action, and (a)(8) for lack of jurisdiction over certain defendants.
On a motion to dismiss pursuant to CPLR 3211, the court must afford the pleadings a liberal construction, accept the well-pleaded allegations as true, and determine whether the allegations fit within any cognizable legal theory. See Leon v. Martinez, 84 NY2d 83, 87-88 (1994).
Discussion
Defendants move to dismiss the FAC on the ground that plaintiff is essentially using the wrong timeframe. Defendants argue that Section 11 limits liability to the time the Registration Statement "became effective," and that plaintiff has not pled a material misstatement or omission as of the January 6, 2017 effective date. Likewise, defendants argue that Section 12(a)(2) limits liability to the time of the Stockholder Vote on the Acquisition, and that plaintiff has not pled a material misstatement or omission in the Prospectus as of the February 15, 2017 shareholder vote. While defendants contend that the merger's closing date is not the operative timeframe, [*4]defendants further argue that plaintiff has not pled a material misstatement or omission as of the Acquisition on June 14, 2018 either. Finally, defendants argue that the claims against the individual defendants, directors of AT & T, also fail for lack of jurisdiction.
Jurisdiction
Turning first to the threshold issue of personal jurisdiction, the Court finds that plaintiff has adequately alleged personal jurisdiction over the individual defendants. The FAC names thirteen individual defendants, all of whom are directors or officers of AT & T, and allegedly reviewed and signed the Registration Statement. ¶ 35.
Defendants argue that plaintiff must either show that each individual defendant is domiciled in New York or rely on long-arm jurisdiction under CPLR 302. Plaintiff alleges that some individual defendants reside in New York, but, as defendants note, does not specify which ones. However, plaintiff also alleges that the Registration Statement, which all individual defendants reviewed and signed, was prepared and reviewed, in part, in New York. ¶ 18. Further, plaintiff alleges that, as reflected in the Offering Documents, individual defendants directed all activities necessary to secure the registration of stock for trading on the New York Stock Exchange, affirmatively solicited and sold the subject securities and the Registration Statement to plaintiff and other investors in New York, met with Time Warner in New York, and retained New York-based legal and financial advisors to facilitate those efforts. ¶18; NYSCEF Doc. No. 72 at 57-60.
While the ultimate burden of proof rests with the party asserting jurisdiction, in opposition to a motion to dismiss pursuant to CPLR 3211(a)(8), a plaintiff need only make a prima facie showing that the defendants are subject to the personal jurisdiction of the New York Supreme Court. See Santiago v. Highway Freight Carriers, Inc., 153 AD3d 750, 751 (2nd Dep't 2017) (internal citations omitted). And, where a plaintiff cites the need for jurisdictional discovery, the plaintiff need only demonstrate that facts may exist to exercise personal jurisdiction over the defendants. Id at 750. Here, in the absence of jurisdictional discovery, plaintiff has demonstrated that facts may exist to exercise personal jurisdiction over the individual defendants.
§11 of the Securities Act
Section 11 of the Securities Act of 1933 provides recourse to any person acquiring a security if, "any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S. 77k. Section 24 (e) of the Investment Company Act of 1940 provides: "[f]or the purposes of section 11 of the Securities Act of 1933, as amended [15 U.S.C. 77k] the effective date of the latest amendment filed shall be deemed the effective date of the registration statement with respect to securities sold after such amendment shall have become effective." 15 U.S. § 80a—24. It is undisputed that the effective date of the Registration Statement in this case is January 6, 2017.
While the parties do not dispute the date that the Registration Statement became effective, they strongly dispute the operative date relevant to determining Section 11 liability in this case. Defendants argue that plaintiff must show a material misstatement or omission was contained in the Registration Statement, that was false or misleading in light of what was known as of January 6, 2017 — the effective date. In opposition, plaintiff argues that the operative date is June 14, 2018 — the date of the Acquisition, because defendant had a duty to update the [*5]Registration Statement.
"To state a claim under Section 11, plaintiffs must allege that the registration statement ... contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading...." 15 U.S.C. § 77k(a). "The truth of a statement made in the registration statement is judged by the facts as they existed when the registration statement became effective." In re Initial Pub. Offering Sec. Litig., 358 F. Supp. 2d 189, 205 (S.D.NY 2004).
Plaintiff does not deny that Section 11 looks to the truth of the Registration Statement at the time it was declared effective by the SEC, but instead argues for Section 11 liability based on a duty to update. Specifically, plaintiff argues that where a registrant offers securities "to be issued in connection with business combination transactions," "on a ... delayed basis in the future" pursuant to Rules 415 and 430 of the Securities Act (17 C.F.R. §230.415(a)(1)(viii)), the registrant must provide "the undertakings required by Item 512(a)" (17 C.F.R. § 230.415(a)(3); 17 C.F.R. §230.430A(a)(2)), which in turn requires the registrant to "reflect in the prospectus any facts or events arising after the effective date of the registration statement ... which, individually or in the aggregate, represent a fundamental change in the information set forth in the registration statement." 17 C.F.R. §229.512(a).
In opposition, defendants argue, among other things, that there necessarily could not have been any "fundamental change in the information set forth in the registration statement" to have triggered any duty to update because the Registration Statement did not "set forth" any information regarding DTVN.
Generally, Section 11 liability is judged from the effective date of the Registration Statement. See In re All. Pharm. Corp. Sec. Litig., 279 F. Supp. 2d 171, 183 (S.D.NY 2003) ("Section 11 plainly states that it provides a civil remedy against certain individuals based on false statements or misleading omissions of material fact in any part of a registration statement when such part became effective") (internal quotation marks omitted) (emphasis added). See Nelson v. Paramount Communications, Inc., 872 F.Supp. 1242, 1246 (S.D.N.Y.1994) ("Section 11 by its own terms is limited to material omissions in parts of registration statements that were misleading when such part[s] became effective") (internal quotation marks omitted).
Nevertheless, plaintiff is correct that Item 512(a) of Regulation S—K requires an issuer to file a post-effective amendment in specified circumstances. 17 C.F.R. § 229.512(a)(1). One such circumstance occurs when a post-effective amendment is necessary "[t]o reflect in the prospectus ... facts or events arising after the effective date of the registration statement ... which ... represent a fundamental change in the information set forth in the registration statement." 17 C.F.R. § 229.512(a)(1)(ii). And, a mandatory post-effective amendment is "deemed to be a new registration statement relating to the securities offered therein[.]" Item 512(a)(1), 17 C.F.R. § 229.512(a)(2). See In re Metro. Sec. Litig., No. CV-04-25-FVS, 2010 WL 537740, at 2 (E.D. Wash. Feb. 8, 2010). Thus, a mandatory post-effective amendment would change the relevant period for Section 11 liability. See Fed. Hous. Fin. Agency v. HSBC N. Am. Holdings Inc., 987 F. Supp. 2d 369, 374 (S.D.NY 2013) (reiterating that "[a] filing that represents a fundamental change in the information set forth in the registration statement has always been deemed to restart the clock on Section 11 claims").
However, the Court finds that no duty to issue a post-effective amendment was triggered here with respect to AT & T's DTVN service for two reasons. First, as defendants argue, the text of the Registration Statement itself does not contain any reference to DTVN. The only references [*6]to DTVN that were part of the Registration Statement were the few references to a "strong" launch contained in the two January 2017 8-Ks that were incorporated by reference. No specific representations were made concerning the viability or success of that section of AT & T's business because DTVN represented such a small portion of AT & T's overall business as of January 2017. And, as defendants argue, there can be no duty to update information that was not contained in the Registration Statement in the first place. Second, even if there was a duty to make a post-effective amendment about a topic that was not explicitly set forth in the Registration Statement, the changes plaintiff alleges to AT & T's DTVN business do not represent a "fundamental change" within the meaning of the Securities Act.
The SEC has provided examples of "fundamental changes" that trigger a duty to issue a post-effective amendment. For example, "major changes in the issuer's operations, such as significant acquisitions or dispositions" and "any change in the business or operations of the registrant that would necessitate a restatement of the financial statements" constitute fundamental changes. See In re Metro. Sec. Litig., No. CV-04-25-FVS citing Delayed or Continuous Offering and Sale of Securities, 46 Fed.Reg. 42,001, 42,007—08. In light of the guidance from the SEC, the changes to AT & T's DTVN subscriptions that plaintiff alleges, do not constitute a fundamental change. Moreover, it is unlikely that any changes to AT & T's DTVN program could have been "fundamental" for several reasons. DTVN had only launched in November 2016, and as of January 2017 the 200,000 DTVN subscribers represented less than 1% of AT & T's Video Entertainment (Satellite and U-verse) subscribers, which, of course, is only one part of AT & T's overall business. Thus, since no duty to issue a post-effective amendment was triggered, the information in the Registration Statement must be viewed in light of whether it was misleading on the date the Registration Statement became effective — January 6, 2017.
The inquiry then for Section 11 liability is whether the Registration Statement contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, as of the effective date. The Court finds that it did not.
Plaintiff's principal allegations of misstatements are contained in ¶ 43 — 47 of the FAC. The FAC purports to quote "the Registration Statement and incorporated documents" as well as "related oral communications." The FAC does not cite sections or pages of the Registration Statement and does not identify which incorporated documents the alleged misstatements come from. Based on the documents submitted in connection with this motion, it appears the quotes contained in ¶ 43 — 47 of the FAC are from AT & T's Form 8-K dated January 20, 2017 (NYSCEF Doc. No. 78) and AT & T's Form 8-K dated January 25, 2017 (NYSCEF Doc. No. 80). The January 2017 8-Ks were incorporated by reference to the Prospectus.[FN1]
Taking plaintiff's allegations as true, the Court finds there was no material misstatement or omission contained in any of the Offering Documents.
The theme of plaintiff's allegations is that AT & T misleadingly "touted" a "strong" launch and subscriber growth with respect to AT & T's DTVN service. FAC ¶ 43 — 47. Plaintiff argues that these statements are misleading because the subscribership was inflated by unsustainable practices such as: (i) offering subscriptions came with free, valuable giveaways; (ii) offering DirecTV subscriptions with fees that quickly increased without warning by way of hidden-price surcharges; (iii) concealing the full terms of certain "price lock" promotions from customers — such that customers believed their price was locked in for as long as their contract, up to two years, but in reality the price lock was not as long as the contract term; and (iv) promoting DTVN so that customers would sign up for the subscription for a low rate, but after a short period of time the monthly fee would increase significantly without warning. See FAC ¶ 52. Plaintiff argues that these practices led to high cancellation rates of DTVN services over time. In sum, plaintiff argues that to report a "strong" launch of DTVN, with subscriber growth "partially offsetting linear video subscriber losses" without also disclosing the practices that contributed to those subscriptions, was misleading.
In opposition, defendants note that (1) the Offering Documents did not discuss any trend concerning the nascent DTVN program and (2) they warned investors not to make assumptions regarding future results, which were subject to uncertainty and risk, and not to read the Offering Documents and incorporated documents as accurate as of any later date, regardless of when the Merger ultimately closed. See NYSCEF Doc. No. 71.
As a preliminary matter, the Court notes that plaintiff does not claim that anything contained in the Offering Documents was false as reported. Instead, plaintiff seems to argue that additional information was necessary in order to make the statements about DTVN "not misleading."
First, the Court rejects plaintiff's claim that AT & T had an obligation to disclose its various promotions for increasing DTVN subscriptions, even if they were flawed as plaintiff alleges. See, e.g., In re Axis Capital Sec. Litig., 456 F. Supp. 2d 576, 586-87 (S.D.NY 2006) (holding that defendant's statements about profits were not misleading for omitting that they were "unsustainable" in absence of anticompetitive scheme); see also Boca Raton Firefighters v. Bahash, 506 F. App'x 32, 38 (2d Cir. 2012) (finding that a violation of federal securities law could not be premised upon company's disclosure of accurate historical data, such as reporting of unmanipulated corporate earnings, even if company did not acknowledge long-term unsustainability of its business model).
Second, mere references to a "strong" launch of the DTVN program are not actionable. Terms like "strong" have routinely been held to be either inactionable corporate puffery, or legitimate statements of optimism. See e.g. In re Xinhua Fin. Media, Ltd. Sec. Litig., No. 07 CIV. 3994 LTS/AJP, 2009 WL 464934, at 8 (S.D.NY Feb. 25, 2009) relying on Lasker v. New York State Elec. & Gas Corp., 85 F.3d 55, 59 (2d Cir.1996). See also Netshoes Sec. Litig. v. XXX, 64 Misc 3d 926, 932, (NY Sup. Ct. 2019) citing Nadoff v. Duane Reade, Inc., 107 F. Appx. 250, 252 2d Cir. 2004 ("[n]either accurate statements about past performance, nor expressions of puffery and corporate optimism are actionable under the securities laws.").
Third, accepting plaintiff's allegation that DTVN "Net Additions" fell in the months leading up to the closing of the Acquisition, the Court finds that is not a basis for finding any pre-vote disclosure misleading. Indeed, as defendants argue, courts consistently reject this form of hindsight pleading. See Netshoes Sec. Litig. at 932 ("[w]hether a statement is materially false and misleading is viewed at the time such statement is made — not retroactively, in hindsight"). [*7]See also Ladmen Partners v. Globalstar, Inc., 2008 WL 4449280, at 17 (S.D.NY Sep. 30, 2008) (rejecting Securities Act claims based on allegedly misleading "reported subscriber growth" because "[p]laintiff does not challenge the truthfulness of any concrete number [actually] reported in the Prospectus"); In re Duane Reade Inc. Sec. Litig., 2003 WL 22801416, at 6 (S.D.NY Nov. 25, 2003) (no liability under the securities laws "for accurate reports of past successes, even if present circumstances are less rosy. . . . disclosure of accurate historical data does not become misleading even if less favorable results might be predictable by the company in the future") (internal quotation marks omitted). See also Thomas Lee Hazen, 2 Law of Securities Regulation § 7:14 ("when subsequent events make an effective registration statement misleading, section 11 does not apply").
Likewise, plaintiff points to statements made by AT & T directors on October 24, 2018, months after the closing of the merger, as indicia that AT & T had known about the risks of their promotional practices related to DTVN and thought that those practices might ultimately cause a drop in subscriptions. See FAC ¶ 67 — 68. The fact that at some time directors determined those promotional practices were detrimental and discontinued them does not render anything in the Offering Documents misleading as of the effective date.
Accordingly, plaintiff's first cause of action for violation of Section 11 of the Securities Act is dismissed.
§12(a)(2) of the Securities Act
Liability under Section 12(a)(2) of the Securities Act applies to a person who "offers or sells a security . . . by means of a prospectus or oral communication" containing "an untrue statement of material fact" or omitting "to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading." 15 U.S.C. § 77l(a)(2). On January 9, 2017, defendants filed a final Prospectus on Form 424B3 for the AT & T shares issued and exchanged in the Acquisition. FAC ¶ 39 and NYSCEF Doc. No. 71 (Prospectus). The Prospectus specifically describes what each Time Warner shareholder would receive if the Acquisition were approved by vote and explained the exchange ratio. See Prospectus at p. 3. The Prospectus also warns in several places that the information contained therein is not necessarily indicative of future results and that stockholders "should not assume that the information contained in this proxy statement/prospectus is accurate as of any date other than" January 9, 2017. The FAC alleges that the "Prospectus and related oral communications contained untrue statements of material fact and concealed and failed to disclose material facts", as discussed above. ¶ 90. As with Section 11, the parties dispute the operative date for Section 12(a)(2) liability.
Both parties acknowledge that the operative period for Section (12)(a)(2) is "the time of sale." However, defendants argue that "time of sale" was the shareholder vote on the merger, February 15, 2017, whereas, plaintiff argues that the "time of sale" was June 14, 2018, when the merger closed. The basis of plaintiff's argument is that after the vote Time Warner shareholders were not legally committed to sell their shares to AT & T; rather, they were free to sell their shares to anyone.
"Unlike Section 11, Section 12(a)(2) does not specify the point in time to which materiality is related." In re All. Pharm. Corp. Sec. Litig., 279 F. Supp. 2d 171, 185 (S.D.NY 2003). SEC guidance provides that "the time at which an investor has taken the action the investor must take to become committed to purchase the securities, and has therefore entered into a contract of sale, is one appropriate time to apply the liability standards of Section [*8]12(a)(2)" SEC Release No. 33-8591, 70 Fed. Reg. 44,722, 44,765-66 (Aug. 3, 2005). "A business combination that involves the sale of securities raises a special problem for identifying the time of purchase for the determination of materiality in connection with a Section 12(a)(2) claim." § 6:136. Critical period of time, 17A Civil Liabilities: Enforcement & Litig. § 6:136. The Court in In re Alliance Pharmaceutical Corp. Securities Litigation grappled with, but did not determine, whether the relevant date in the context of a merger, was the stockholder vote or the date the merger closed.
Defendants offer three compelling arguments in favor of the vote date being the operative date here: First, Section 12(a)(2) applies only to the offer or sale of AT & T stock, not Time Warner stock. While Time Warner stockholders could have bought or sold Time Warner stock for cash after the vote and before closing, this transaction would not have involved AT & T stock. Those transactions would not implicate Section 12(a)(2) because they do not involve the offer or sale of the "issuer['s]" stock. Second, a stockholder's decision to buy or not sell Time Warner stock after the vote would be a secondary market transaction, and thus Section 12(a)(2) would not apply. See, e.g., Yung v. Lee, 432 F.3d 142, 149 (2d Cir. 2005) ("Section 12(a)(2) action cannot be maintained by a plaintiff who acquires securities through a private transaction," even where the plaintiff alleges that he relied on the issuer's prospectus). Third, Section 12(a)(2) liability does not protect decisions by Time Warner stockholders to retain their stock through the Merger's closing because "misrepresentations that cause a shareholder simply to hold stock, rather than to buy or sell shares, are not made 'in connection with the purchase or sale' of securities, and therefore are not actionable under federal law." Atencio v. Smith Barney, Citigroup Inc., 2005 WL 267556, at 4 (S.D.NY Feb. 2, 2005) (quoting Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 754-55 (1975)).
In any event, measured from either date, as discussed above, the Court finds that no material misstatements or omissions were made in the Offering Documents; thus, plaintiff's second cause of action for violation of Section 12 (a)(2) of the Securities Act is dismissed. 
§15 of the Securities Act
Section 15 of Securities Act makes "control persons," or persons who "control" defendants liable under Sections 11 and 12. The purpose of this section is to help investors collect damages in cases where the defendant is insolvent or does not have enough money to pay the investor. Here, because the Court has not found liability under Section 11 or 12, plaintiff's third cause of action for violation of Section 15 of the Securities Act is dismissed as moot.
Conclusion
As discussed above, the heightened pleading standard under CPLR §3016(b) applies to all three of plaintiff's claims in this action. However, the Court notes that even if the notice pleading standard under CPLR §3013 applied, the action must still be dismissed. Defendants put forth documentary evidence, specifically the Offering Documents themselves, which utterly refute plaintiff's claims. The Offering Documents reveal that, contrary to plaintiff's claims, neither the Registration Statement nor the Prospectus makes any specific representations about DirecTV or DTVN, aside from a "strong launch," because DirecTV and DTVN were not material to AT & T's business at the time. Moreover, the Offering Documents expressly stated that the information in them was true and accurate only as of the date of the offering documents and not a warranty of any future developments. Finally, even accepting all of plaintiff's allegations as true, plaintiff's allegations do not rise to the level of materiality that would require corrective disclosure, and thus the veracity of the Offering Documents must be viewed in light of [*9]what was known when they were filed. Nothing in the FAC suggests that the Offering Documents were not true when they were filed, and no later developments can render the Offering Documents here misleading.
Accordingly, it is hereby,
ORDERED that the First Amended Class Action Complaint is dismissed.
This amended decision and order corrects and supersedes the prior opinion on this motion.
DATED: May 6, 2020
BARRY R. OSTRAGER, J.S.C.



Footnotes

Footnote 1:In the Prospectus, "Time Warner and AT & T incorporate by reference the documents listed below and any documents subsequently filed by it pursuant to Section 13(a), 13(c), 14 or 15(d) of the Exchange Act and before the date of the special meeting." NYSCEF Doc. No. 71 at 158. This includes the January 2017 Form 8 -Ks.