**10-1549-cv**
**Ashland Inc., AshThree LLC v. Morgan Stanley & Co.**

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2010

(Argued: March 9, 2011                    Decided: July 28, 2011)

Docket No. 10-1549-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ASHLAND INC., ASHTHREE LLC,

        Plaintiffs-Appellants,

                v.

MORGAN STANLEY & CO., INC.,

        Defendant-Appellee.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

B e f o r e:   WINTER, POOLER, and HALL, Circuit Judges.

Appeal from an order of the United States District Court for the Southern District of New York (Robert P. Patterson, Jr., Judge) dismissing plaintiffs' complaint for failure to state a claim under Rule 12(b)(6). Appellants assert claims under Section 10(b) of the Securities Exchange Act of 1934 and New York common law arising from their purchase and retention of auction rate securities. We affirm the dismissal for failure to plead reasonable reliance on appellee's alleged misrepresentations.

CHRISTOPHER P. JOHNSON (Laurin B. Grollman, on the brief), Kasowitz, Benson, Torres & Friedman LLP, New York, New York, for Plaintiffs-Appellants.

JOHN K. CARROLL (Scott D. Musoff, on the brief), Skadden, Arps, Slate, Meagher & Flom LLP, New York, New York, for Defendant-Appellee.

WINTER, Circuit Judge:

Ashland Inc. and AshThree LLC (together, "Ashland" or "appellants") appeal from Judge Patterson's dismissal of their first amended complaint ("FAC"), which asserted claims against Morgan Stanley under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and New York common law.  Appellants contend that Morgan Stanley, in oral and email communications with Ashland's Assistant Treasurer, materially misrepresented the liquidity of certain auction rate securities ("ARS") and thereby fraudulently induced Ashland to purchase and hold these securities at a time when Morgan Stanley knew that the market for ARS was collapsing.  We affirm the district court's dismissal on the ground that sophisticated investors like appellants cannot plead reasonable reliance on Morgan Stanley's alleged misrepresentations in light of Morgan Stanley's publicly-filed statement explicitly disclosing the very liquidity risks about which appellants claim to have been misled.

BACKGROUND

Ashland Inc. is a Kentucky-based global chemical company. It is the sole owner and operator of the special purpose entity AshThree LLC, a Delaware limited liability company. AshThree holds the securities at issue in this case. Appellee Morgan Stanley is a Delaware corporation with its principal place of business in New York.

Ashland's relationship with Morgan Stanley began in May 2007, when Ashland's long-time financial advisor, Thomas Byrne, moved to Morgan Stanley. Around that time, Byrne called Ashland's Assistant Treasurer, Joseph Broce, to discuss moving Ashland's investments to Morgan Stanley. Byrne recommended investing in Morgan Stanley-brokered ARS. ARS are long-term bonds and stocks whose interest rates or dividend yields are periodically reset through auction. At each auction, holders and buyers of the securities specify the minimum interest rate at which they want to hold or buy. If buy/hold orders meet or exceed sell orders, the auction succeeds. If supply exceeds demand, however, the auction fails and the issuer is forced to pay a higher rate of interest in order to penalize it and to increase investor demand. For a more thorough explanation of the mechanics of ARS, see In the matter of Bear Stearns & Co., et al., SEC Release No. 8684, 88 SEC Docket 259 (May 31, 2006).

The ARS at issue in this matter were backed by student loan obligations ("SLARS"). Byrne is alleged to have told Broce that

3

the ARS were "safe, liquid instruments that were suitable to [appellants'] conservative investment policies." Byrne further represented that the SLARS would remain liquid because Morgan Stanley had never conducted a failed auction and "in the event of any instability or weakness in the market for SLARS . . . which Morgan Stanley represented to be a very 'rare' occurrence -- Morgan Stanley's brokers and other brokers would step in and place sufficient proprietary bids to prevent auction failure and ensure the liquidity of Ashland's SLARS." Because bid information about ARS auctions was not publicly available, however, appellants could not know how often Morgan Stanley had intervened to ensure a successful auction. Ashland also alleges that, in fact, Morgan Stanley knew as early as August 2007 that the ARS market was collapsing, in part because Morgan Stanley was often required to intervene to prevent auction failure.

Ashland purchased SLARS through Morgan Stanley on three separate occasions in 2007 -- September 25, October 2, and November 29. On the days leading up to each purchase, Byrne assured Broce "that SLARS continued to be a safe, liquid investment." Accordingly, throughout this period, Ashland placed only "hold" or "hold-at-rate" orders at auctions, rather than "sell" orders.[1] In December 2007, Ashland learned that Goldman

---

[1] A "hold" order, which is the default for current investors, means that the investor will continue to hold the securities regardless of the clearing rate. By contrast, a "hold-at-rate" order means that the investor will retain the

Sachs, acting as underwriter in an unrelated ARS auction, had allowed that auction to fail. Byrne reassured Broce that this failure had no bearing on the safety of its SLARS, which were based on student loans backed by a federal guarantee, unlike those in the failed auction. In January 2008, Ashland learned of other auction failures, but Morgan Stanley continued to assert that ARS were a safe, liquid investment. When Ashland began placing "sell" orders around February 2008, however, it found that the market was illiquid because Morgan Stanley was no longer stepping in to ensure auction success.

Appellants filed a complaint in the Southern District of New York in June 2009, which they amended in September 2009, asserting claims for violation of Section 10(b) of the Exchange Act, common law fraud, promissory estoppel, breach of fiduciary duty, negligence, negligent misrepresentation, and unjust enrichment. In addition to alleging that Morgan Stanley misrepresented the safety and liquidity of the SLARS, the FAC also alleges the following pertinent omissions. Morgan Stanley failed to disclose: (i) how often demand failed to meet supply in SLARS auctions, and consequently, how often it had to step in to purchase the SLARS; (ii) that the government guarantee and non-dischargeability in bankruptcy of the underlying student debt obligations were unrelated to the SLARS' liquidity; (iii) the

---

securities only if the clearing rate is at, or above, a rate specified by the investor.

relationship between fail rates, AAA ratings, and liquidity; and (iv) that it was not fully committed to ensuring liquidity of the SLARS.

The district court dismissed the FAC in its entirety. Ashland Inc. v. Morgan Stanley & Co., 700 F. Supp. 2d 453, 473 (S.D.N.Y. 2010). It relied in part on the fact that in May 2006 Morgan Stanley "placed a statement of its ARS policies and practices online, 'as a result of an Order entered into between the [Securities and Exchange Commission ("SEC")] and certain active broker-dealers in the auction rate securities market.'" Id. at 461. The SEC-ordered statement included several relevant disclosures. It stated that "Morgan Stanley is permitted, but not obligated, to submit orders in auctions for its own account either as a bidder or a seller and routinely does so [in] its own discretion." Id. It further explained that

> Morgan Stanley routinely places one or more bids in an auction for its own account to acquire ARS for its inventory, to prevent a failed auction or to prevent an auction from clearing at a rate that Morgan Stanley believes is higher than the market for similar securities at the time it makes its bid. . . . [However,] Morgan Stanley is not obligated to bid in any auction to prevent an auction from failing or clearing at an off-market rate. Investors should not assume that Morgan Stanley will do so.

Id. It also stated that ARS holders "may be disadvantaged if there is a failed auction because they are not able to exit their position through the auction" and explained that "the fact that

6

an auction clears successfully does not mean that an investment in the ARS involves no significant liquidity or credit risk." Id.

The district court concluded that the Section 10(b) securities fraud claim failed because: (i) "hold" and "hold-at-rate" orders did not constitute a purchase or sale of securities under Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723 (1975); (ii) the FAC did not allege facts to support a strong inference of scienter as to any misrepresentations or omissions; and (iii) the FAC did not allege facts to show that appellants were reasonable in their reliance on any alleged misrepresentations. Ashland, 700 F. Supp. 2d at 467-71. It also dismissed the common law fraud and promissory estoppel claims due to lack of reasonable reliance. Id. at 471-72. Finally, it held that the remaining state law claims were preempted by New York's Martin Act. Id. at 472. This appeal followed.

DISCUSSION

We review a district court's grant of a motion to dismiss under Rule 12(b)(6) de novo, accepting as true all facts alleged in the complaint and drawing all reasonable inferences in favor of the non-moving party. Chase Grp. Alliance LLC v. City of N.Y. Dep't. of Fin., 620 F.3d 146, 150 (2d Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949

(2009) (quoting Bell Atl. Corp. v. Twombley, 550 U.S. 544, 570 (2007)).

a) Section 10(b) Claim

To sustain a private claim for securities fraud under Section 10(b), "a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."[2] Stoneridge Inv. Partners, LLC v. Scientific-

---

[2] As a threshold matter, appellants contend that the district court erred in dismissing a number of their claims relating to their "holding" of SLARS in reliance upon the alleged misrepresentations and omissions by Morgan Stanley. Typically, a "holder" of securities lacks standing to prosecute a claim under the federal securities laws. See Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 747-49 (1975) (establishing a purchaser-seller limit on standing); accord Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 88 n.13 (2006); accord Amorosa v. AOL Time Warner Inc., 409 F. App'x 412, 417 (2d Cir. 2001) (summary order) ("[T]here is no 'holder' claim under federal securities law."). Appellants argue that ARS differ from traditional securities because ARS are subject to periodic auctions, which require an ARS owner to make an active decision to hold the security before the auction. They believe this eliminates the concerns about "holder" standing raised in Blue Chip Stamps, including concerns about the lack of competent evidence that a holder, in fact, made an active decision to hold. Blue Chip Stamps, 421 U.S. at 743 (elimination of the purchaser-seller requirement "would throw open to the trier of fact many rather hazy issues of historical fact the proof of which depended almost entirely on oral testimony"). We need not reach the question of whether ARS are sufficiently distinguishable from other types of securities to confer standing on a holder of ARS to bring a claim under the securities laws, because we find that appellants have failed to establish that they reasonably relied on the alleged misrepresentations by Morgan Stanley.

*Atlanta, Inc.*, 552 U.S. 148, 157 (2008). Moreover, a plaintiff's reliance on the defendant's misrepresentation must have been reasonable in order for the claim to proceed. See *Harsco Corp. v. Segui*, 91 F.3d 337, 342 (2d Cir. 1996) (collecting cases from various circuits). "An investor may not justifiably rely on a misrepresentation if, through minimal diligence, the investor should have discovered the truth." *Brown v. E.F. Hutton Grp., Inc.*, 991 F.2d 1020, 1032 (2d Cir. 1993). Factors relevant to this analysis include:

> (1) [t]he sophistication and expertise of the plaintiff in financial and securities matters; (2) the existence of longstanding business or personal relationships; (3) access to the relevant information; (4) the existence of a fiduciary relationship; (5) concealment of the fraud; (6) the opportunity to detect the fraud; (7) whether the plaintiff initiated the stock transaction or sought to expedite the transaction; and (8) the generality or specificity of the misrepresentations.

*Id.* (collecting cases).

Appellants argue that their reliance on Broce's misrepresentations was reasonable in light of their longstanding relationship with him, their repeated inquiries as to the liquidity of SLARS, and the fact that auction information was not publicly available. However, the SEC-mandated statement explicitly disclosed the very liquidity risks about which

9

appellants claim to have been misled.[3]  Specifically, the statement revealed that Morgan Stanley routinely placed bids in its own auctions, in part to prevent auctions from failing. Moreover, the statement was clear that Morgan Stanley did so at its discretion and "[wa]s not obligated to bid in any auction to prevent an auction from failing."  In the face of this SEC-mandated disclosure,[4] Ashland, which admits to being "a sophisticated investor," was not justified in relying on Byrne's statements that SLARS "had no liquidity issues," or that "in the

---

[3] Appellants bring our attention to a letter amicus filed by the SEC in Wilson v. Merrill Lynch & Co., No. 10-1528 (2d Cir. argued Feb. 25, 2011).  Appellants describe this letter as adopting their arguments with regard to whether the disclosures at issue in the present matter adequately described the risks of ARS.  However, the allegations in Wilson were that Merrill Lynch followed a "'uniform policy' of placing support bids 'if needed' in 'every' auction for which it was the sole or lead auction dealer."  Amicus Letter Brief for SEC at 4, Wilson, No. 10-1528 (2d Cir. June 24, 2011).  The complaint alleged that this conduct was manipulation designed to create an appearance of an active market that was in fact illusory.  Id.  The allegations in the present case are that Morgan Stanley described the SLARS sold to appellants as safe and liquid and that in the event of "instability or weakness in the market for SLARS," Morgan Stanley would step in and place sufficient proprietary bids to prevent auction.  Far from alleging that they were misled by Morgan Stanley's purchasing of ARS, appellants' complaint is in large part about Morgan Stanley's failure to step in and stabilize the market for SLARS.

[4] Appellants admitted, in their written submissions and oral argument before the district court, that they had received these written disclosures after their first purchase of SLARS but before subsequent auctions at which they placed "hold" and "hold-at-rate" orders.  Regardless of precisely when they received the statement in writing, the statement was also available online, and appellants could have easily discovered it through minimal diligence.

event of 'instability or weakness,' Morgan Stanley would 'come in and make a market,' as it had always done in the past."

Nor does the alleged misrepresentation that the liquidity of SLARS was assured because of a federal government guarantee of the underlying student loans save appellants' claim. The value of ARS is of course affected by the riskiness of the underlying collateral. Because the SLARS were backed by pools of guaranteed student loans, they were less risky than ARS backed by non-guaranteed loans, which have a higher risk of default. However, the appeal of ARS or SLARS is that they, in good times, provide a degree of liquidity not associated with the collateral. While the reduced risk of the collateral's default may affect the liquidity of ARS, a government guarantee of the collateral does not eliminate the risk of SLARS becoming illiquid. A reasonable sophisticated investor knows this because the reason for buying SLARS instead of the student loans themselves is to obtain greater liquidity. Indeed, the FAC alleges that appellants bought SLARS to obtain such liquidity and that Broce conceded the possibility of illiquidity by promising that Morgan Stanley would step in to prevent it.

Therefore, even accepting as true all of the facts alleged in the FAC, appellants' Section 10(b) claim fails due to their inability to plead reasonable reliance on the alleged misrepresentations.

11

b) Common Law Claims

Ashland also appeals from the dismissal of its common law claims. Unlike the district court, we do not address whether Martin Act preemption applies but instead affirm on appellants' lack of reasonable reliance. See Primetime 24 Joint Venture v. Nat'l Broad., Co., 219 F.3d 92, 103 (2d Cir. 2000) ("Because we review the district court's decision to dismiss under Rule 12(b)(6) de novo, we are free to affirm the decision below on dispositive but different grounds.").

Reasonable reliance is a required element of common law fraud, promissory estoppel, breach of fiduciary duty, and negligent misrepresentation under New York law. See Crigger v. Fahnestock & Co., 443 F.3d 230, 234 (2d Cir. 2006) (common law fraud); Kaye v. Grossman, 202 F.3d 611, 615 (2d Cir. 2000) (promissory estoppel); King v. Crossland Sav. Bank, 111 F.3d 251, 257-58 (2d Cir. 1997) (negligent misrepresentation); Carr v. Neilson, 909 N.Y.S.2d 387, 387 (N.Y. App. Div. 2010) (breach of fiduciary duty). We therefore affirm the dismissal of these claims for the reasons stated above. Because appellants' negligence claim is virtually identical to their negligent misrepresentation claim, we also affirm that dismissal.

Finally, appellants' unjust enrichment claim simply does not fit the facts of this case. Under New York law, an unjust enrichment claim requires a plaintiff to prove that "(1) defendant was enriched, (2) at plaintiff's expense, and (3)

12

equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." <u>Diesel Props S.R.L. v. Greystone Bus. Credit II LLC</u>, 631 F.3d 42, 55 (2d Cir. 2011) (internal quotation omitted). The FAC states that "[e]quity and good conscience require disgorgement of fees earned by Morgan Stanley from Ashland's purchases of Morgan Stanley-brokered SLARS," because Ashland thought it was purchasing liquid investments. However, the facts alleged are that Ashland, a sophisticated investor, failed to apprise itself of the publicly disclosed riskiness of ARS as liquid investments. There is little in equity and good conscience that weighs in favor of the return of the fees it paid in connection with those transactions.

We have considered appellants' remaining contentions and conclude that they are without merit.

CONCLUSION

For the foregoing reasons, we affirm the district court's dismissal of appellants' complaint.