LOUIS L. STANTON, U.S.D.J.
Defendant TriPoint Global Equities, LLC ("TriPoint") moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss claims brought by plaintiffs David Nagelberg ("Nagelberg") and Matthew Hayden ("Hayden") for failure to state a claim upon which relief can be granted. For the reasons that follow, the motion is granted in part and denied in part.
BACKGROUND
The following facts are alleged in the amended complaint (Dkt. No. 22).
Between January 2015 and January 2017, defendants Joseph Meli ("Meli") and Matthew Harriton ("Harriton") raised over $97 million from investors, including millions of dollars from Nagelberg and Hayden, in a fraudulent scheme. Am. Compl. ¶¶ 1-6, 89-150, 216.
Meli and Harriton represented to investors that they had exclusive access to bulk premium tickets to some of the biggest live events in the United States. Id. ¶ 34. They told investors that they would pool investor funds to purchase large blocks of tickets for theatrical and live-entertainment events, including the Broadway musical Hamilton, and concerts of popular music artists including Adele, The Rolling Stones, Bob Dylan, Paul McCartney, and others, which they would then resell at a substantial mark-up to secondary market brokers in bulk or directly to fans who attend the events, generating high returns for investors. Id. ¶¶ 1, 37-40, 52-53, 73, 150, 217.
Meli and Harriton set up four entities, 875 Holdings, LLC, Advance Entertainment, LLC, Advance Entertainment II, LLC, and 127 Holdings LLC (the "four entities"), in which plaintiffs and others invested, and which were purportedly to *412 act as vehicles to purchase the tickets. Id. ¶¶ 5, 24-27, 41-80.
Meli and Harriton showed investors a 2015 letter agreement with Jeffrey Seller, a Hamilton producer, under which Advance Entertainment, LLC purportedly purchased 35,000 premium Hamilton tickets for $7 million (the "Hamilton agreement"), and a 2016 letter agreement with September Management, Ltd., under which Advance Entertainment, LLC could acquire up to $15 million of premium tickets to Adele concerts. Id. ¶¶ 38-39, 55-68. Meli and Harriton told investors that their investment was "in exchange for an entitlement to certain proceeds from the re-sale of the" Hamilton tickets and Adele concert tickets. Id. ¶¶ 58, 64. However, no agreement existed between the defendants and Mr. Seller or September Management, Ltd. to purchase tickets to those events, and the bulk of the money raised from investors was not used to purchase tickets. Id. ¶¶ 54-68.
Of the more than $97 million raised, over $59 million went directly to prior investors to create the illusion of profitable returns. Id. ¶¶ 33, 219. More than $10.2 million was misappropriated for Meli and Harriton's personal use. Id. ¶ 220. More than $1.8 million was transferred to other entities controlled by Meli and Harriton and to their family members. Id. ¶ 221.
TriPoint
TriPoint is an investment bank located in New York City. Id. ¶ 28. It advertises to investors its trusted advice and proven execution. Id. ¶ 81. TriPoint worked as a placement agent for Meli and Harriton by helping them find investors. Id. ¶ 82. It distributed materials promoting Meli and Harriton's experience, and their plan to buy blocks of tickets to live events in advance of the event and to turn a profit by reselling them in the secondary market. Id. ¶¶ 83-84. Meli and Harriton paid TriPoint a broker fee tied to the gross proceeds that TriPoint introduced into the investment, and a remainder fee based on profits supposedly earned on particular investments. Id. ¶ 88.
In December of 2015, Hayden met with a TriPoint investment banking associate named Robert Nathan during a conference in Los Angeles. Id. ¶ 89. Nathan told Hayden that TriPoint was acting as a placement agent for an investment with Meli and Harriton. Id. ¶ 90. Hayden told Nathan that he was only interested in low risk investments, and asked what due diligence TriPoint had done on Meli and Harriton and their entities. Id. Nathan explained the purported investment scheme to Hayden. Id. ¶ 91. He touted Meli's extensive experience in the live event and concert industry and Harriton's extensive investment experience, and told Hayden that Harriton was his family friend who he had known since high school. Id. ¶ 92. Nathan told Hayden that first he would have to invest in a diversified portfolio of live events, following which he could invest in individual high profile events like Hamilton and Adele concerts. Id. ¶ 93.
Nathan showed Hayden the Hamilton agreement, under which Advance Entertainment, LLC purportedly purchased 35,000 premium Hamilton tickets for $7 million, and assured Hayden that TriPoint had verified the agreement and the relationship between Meli and Harriton and Mr. Seller, the Hamilton producer. Id. ¶¶ 95-96. Nathan told Hayden that TriPoint had examined records of past ticket deals done by Meli and Harriton and verified profits made by investors. Id. ¶ 98. He also told Hayden that TriPoint was verifying all of the wire transfers to the four entities to ensure that all investor money that TriPoint introduced to the investment was being used to fund ticket deals. Id. ¶ 100. Nathan sent Hayden the LLC agreement for 875 Holdings, LLC, as well *413 as other investment documents and instructions on how to proceed with the investment. Id. ¶ 103. In January of 2016, Hayden invested $500,000 in 875 Holdings, LLC, in reliance on Nathan's representations. Id. ¶¶ 102-04, 262-63. Nathan then introduced Hayden to Meli, and in the following months Hayden made additional investments in other entities controlled by Meli and Harriton. Id. ¶¶ 105-120.
During their early discussions, Hayden told Nathan that his friend Nagelberg was also considering the investment. Id. ¶ 121. Nathan told Hayden about TriPoint's due diligence investigation of Meli, Harriton, and their entities knowing that Hayden would relay that information to Nagelberg, and knowing that Nagelberg would rely on it in deciding whether to invest. Id. ¶¶ 122, 125. Hayden conveyed to Nagelberg what Nathan told him about the investment opportunity and about TriPoint's due diligence. Id. ¶¶ 123-24. Hayden also introduced Nagelberg to Meli, and Meli then introduced both Hayden and Nagelberg to Harriton. Id. ¶ 126. In reliance on Nathan's representations, Nagelberg decided to invest. Id. ¶¶ 123-49, 262-63. Hayden and Nagelberg lost approximately $4.2 million in funds they invested in the four entities. Id. ¶ 265.[1]
Hayden and Nagelberg claim that Nathan lied about TriPoint's investigation into Meli, Harriton, and their entities, and accuse TriPoint of assisting in the fraud. They assert claims against TriPoint for fraud, aiding and abetting fraud, negligent misrepresentation, and unjust enrichment. TriPoint argues that it did not know that Meli and Harriton were engaged in fraud, and moves to dismiss the claims for failure to state a claim upon which relief can be granted.
DISCUSSION
Legal Standard
On a motion to dismiss under Rule 12(b)(6), all factual allegations in the complaint are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 110-11 (2d Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id., citing Twombly, 550 U.S. at 556, 127 S.Ct. at 1965. A complaint will not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.' " Id., citing Twombly, 550 U.S. at 557, 127 S.Ct. at 1966.
1. Common Law Fraud
"The elements of a fraud cause of action consist of 'a misrepresentation or a material omission of fact which was false and known to be false by the defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury' " Pasternack v. Lab. Corp. of Am. Holdings, 27 N.Y.3d 817, 827, 37 N.Y.S.3d 750, 756, 59 N.E.3d 485, 491 (2016), quoting Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 178, 919 N.Y.S.2d 465, 469, 944 N.E.2d 1104, 1108 (2011).
*414 TriPoint argues that the fraud claim must be dismissed because (1) plaintiffs do not allege facts from which one can reasonably infer that TriPoint knew that Meli and Harriton were engaged in fraud, (2) plaintiffs fail to meet Rule 9(b)'s heightened pleading requirements for allegations of fraud, and (3) even if Hayden can state a claim for fraud, Nagelberg's claim should be dismissed because TriPoint did not make any representations to Nagelberg. Those arguments are unavailing.
First, the fraud claim against TriPoint is not based on the fraud Meli and Harriton engaged in, but on false representations that TriPoint made to Hayden. Am. Compl. ¶¶ 257-58. Nathan told Hayden that TriPoint verified the Hamilton agreement and the relationship between Meli and Harriton and Mr. Seller, that TriPoint reviewed prior returns on ticketing arrangements by Meli and Harriton and verified profits made by investors in those deals, and that TriPoint was verifying wire transfers to the four entities to ensure that the money it introduced into the investment went to fund ticket purchases. Id. ¶¶ 96, 98, 100, 257. Plaintiffs allege that those statements were false-i.e., that TriPoint had not actually confirmed the truth of those things-because had TriPoint conducted a proper investigation as it said it did, it would have discovered that there was no agreement to purchase Hamilton tickets, there were no prior profits on ticket deals, and the money it introduced to the deal was not going to ticket brokers but to prior investors and to Meli and Harriton's own use. Id. ¶¶ 96-97, 99, 101, 258. TriPoint knew when it made those statements the thoroughness of its investigation into the scheme, and plaintiffs urge the reasonableness of the inference that TriPoint must have been aware that its investigation was not thorough enough to support those statements. The possibility remains, as TriPoint argues, that when it made those statements it believed that its investigation was adequate and its conclusions correct. Decision of that point requires hearing and consideration of the evidence.
Second, to satisfy Rule 9(b), "a complaint alleging fraud must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.' " United States ex rel. Ladas v. Exelis, Inc., 824 F.3d 16, 25 (2d Cir. 2016), quoting Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994). Plaintiffs have satisfied those requirements. The amended complaint specifies the statements that plaintiffs contend were fraudulent, discussed in the previous paragraph. Am. Compl. ¶¶ 96, 98, 100, 257. It identifies Robert Nathan, a Tripoint investment banking associate, as the speaker. Id. ¶ 89. It states that the statements were made in December 2015 during a conference in Los Angeles, California. Id. It explains that TriPoint knew its statements were false because it knew the level of its own investigation into the scheme and knew that its investigation was not thorough enough to support the statement that it had verified those things. Id. ¶¶ 97, 99, 101, 258.[2]
Third, "Under New York law, a plaintiff may state a claim for fraudulent misrepresentation made to a third party if he alleges that he relied to his detriment on the defendant's misrepresentation and that the defendant intended the misrepresentation *415 to be conveyed to him." Sec. Inv'r Prot. Corp. v. BDO Seidman, LLP, 222 F.3d 63, 71 (2d Cir. 2000), citing Rosen v. Spanierman, 894 F.2d 28, 33 (2d Cir. 1990). Here, plaintiffs adequately allege that Robert Nathan, the TriPoint associate, knew that Nagelberg was considering the investment, knew that Hayden would relay his statements to Nagelberg, and knew that Nagelberg would rely on those statements in deciding whether to invest. Am. Compl. ¶¶ 121-25. One can reasonably infer that Nathan intended his statements to be conveyed to Nagelberg.[3]
Accordingly, the motion to dismiss the fraud claim is denied.
2. Aiding and Abetting Fraud
"To establish liability for aiding and abetting fraud under New York law, 'the plaintiffs must show (1) the existence of a fraud; (2) the defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission.' " Krys v. Pigott, 749 F.3d 117, 127 (2d Cir. 2014), quoting Lerner v. Fleet Bank, N.A., 459 F.3d 273, 292 (2d Cir. 2006). The existence of a fraud must be pleaded with particularity. Fed. R. Civ. P. 9(b) ; Lerner, 459 F.3d at 292-93.
Unlike the previous claim for fraud, the aiding and abetting claim is predicated on TriPoint's purported assistance to the underlying fraud perpetrated by Meli and Harriton. Am. Compl. ¶¶ 268-70. But plaintiffs do not plead facts showing that TriPoint actually knew of that fraud.
"A failure to allege sufficient facts to support the inference that the alleged aider and abettor had actual knowledge of the fraudulent scheme warrants dismissal of the aiding and abetting claim at the pleading stage." Krys, 749 F.3d at 127, citing Lerner, 459 F.3d at 292-93 and Nat'l Westminster Bank USA v. Weksel, 124 A.D.2d 144, 149, 511 N.Y.S.2d 626, 630 (1st Dep't 1987). Alleging "constructive knowledge, which is knowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person," is not enough to plead the knowledge element of an aiding and abetting claim. Id. (emphasis in Krys ) (internal quotation marks, alteration, and citation omitted).
While plaintiffs allege that TriPoint misrepresented the thoroughness of its own investigation into Meli and Harriton's venture, they do not allege facts showing that TriPoint actually knew that Meli and Harriton were using proceeds not to purchase live event tickets for resale on the secondary market but to repay prior investors and for their own use. See Iqbal, 556 U.S. at 683, 129 S.Ct. at 1952 (rejecting conclusory allegations that defendants' acted with a particular state of mind in the absence of factual allegation sufficient to plausibly suggest that state of mind). Conclusory allegations that "TriPoint knew of the fraud, or it was so obvious that they must have known of the fraud," Am. Compl. ¶ 269, without supporting factual allegations showing that TriPoint actually knew that Meli and Harriton were engaged in fraud, is not enough to plead knowledge.[4]
Plaintiffs argue that TriPoint misrepresented the thoroughness of its investigation into the ticket scheme, which shows that TriPoint consciously avoided knowledge *416 of the fraudulent scheme, and conscious avoidance of knowledge is sufficient to plead the knowledge element here. In Krys v. Pigott, the Second Circuit left unanswered whether alleging facts showing conscious avoidance of knowledge is enough to sustain a claim for aiding and abetting fraud at the pleading stage. Krys, 749 F.3d at 131 ("it is unclear whether a claim of aiding and abetting under New York law is sustainable on a basis not of actual knowledge but of conscious avoidance of knowledge"), citing Krys v. Butt, 486 Fed.Appx. 153, 157 n.5 (2d Cir. 2012). Conscious avoidance is where a "defendant was aware of a high probability of the relevant fact and consciously avoided confirming that fact." Krys, 749 F.3d at 132 (citation and alterations omitted). But overstating its own due diligence does not show that TriPoint was actually aware of a high probability that Meli and Harriton were misappropriating investors' funds and consciously avoided confirming it.
Because plaintiffs have not pleaded factual allegations showing that TriPoint actually knew of the underlying fraud, or that it was aware of a high probability of the underlying fraud and consciously avoided confirming it, the aiding and abetting claim cannot be sustained.
3. Negligent Misrepresentation
"To state a claim for negligent misrepresentation under New York law, the plaintiff must allege that '(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.' " Anschutz Corp. v. Merrill Lynch & Co., 690 F.3d 98, 114 (2d Cir. 2012), quoting Hydro Inv'rs, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 20 (2d Cir. 2000).
TriPoint argues that as placement agent for Meli, Harriton, and their entities, its customers with whom it was in a "special relationship," and to whom its resulting duties were owed, were Meli, Harriton, and their entities, and not the plaintiffs.
But plaintiffs plead sufficient facts about the nature of the relationship between TriPoint and Hayden to allege that TriPoint owed Hayden a duty to speak with care.
The New York Court of Appeals has held:
liability for negligent misrepresentation has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified.
* * * *
Whether the nature and caliber of the relationship between the parties is such that the injured party's reliance on a negligent misrepresentation is justified generally raises an issue of fact. In determining whether justifiable reliance exists in a particular case, a fact finder should consider whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose.
Kimmell v. Schaefer, 89 N.Y.2d 257, 263-64, 652 N.Y.S.2d 715, 719, 675 N.E.2d 450, 454 (1996). "Strong allegations on the first and third factors can overcome weak pleading of the second, somewhat circular factor."
*417 LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC, 10 F.Supp.3d 504, 526 (S.D.N.Y. 2014), citing Suez Equity Inv'rs, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 103 (2d Cir. 2001).
" Kimmell distinguished between 'casual statements and contacts' that a seller would make informally in the course of a day's business, and 'deliberate representations' that give rise to a duty to speak with care." Suez Equity, 250 F.3d at 103, quoting Kimmell, 89 N.Y.2d at 263, 652 N.Y.S.2d at 719, 675 N.E.2d at 454.
Plaintiffs allege that Hayden told Nathan that he was interested only in low risk investments where his principal would be secure, and asked what due diligence TriPoint had done on Meli, Harriton, and their entities. Am. Compl. ¶¶ 90, 107. Nathan explained the investment structure to Hayden in detail, and touted Meli and Harriton's extensive experience. Id. ¶¶ 92-94. Nathan also told Hayden that he and Harriton were family friends and had known each other since high school. Id. ¶ 92. Nathan showed Hayden the purported Hamilton agreement and assured Hayden that TriPoint had verified the agreement and the relationship between Meli and Harriton and the Hamilton producer Jeffrey Seller. Id. ¶¶ 95-96. Nathan told Hayden that TriPoint had examined the records of past ticket deals done by Meli and Harriton and verified profits made by investors in those deals, and that TriPoint was verifying all of the wire transfers to the four entities to ensure that all investor money TriPoint introduced to the investment was being used to fund ticket deals. Id. ¶¶ 98, 100. Nathan sent Hayden the LLC agreement for 875 Holdings, LLC, other investment documents, instructions on how to proceed with the investment, and documents for Hayden to execute in order to invest, which Hayden executed and returned to Nathan. Id. ¶¶ 103-04, 114-15.
A jury can find that the alleged communications from Nathan to Hayden crossed the line between "casual statements and contacts that a seller would make informally in the course of a day's business" and "deliberate representations that give rise to a duty to speak with care." Suez Equity, 250 F.3d at 103, quoting Kimmell, 89 N.Y.2d at 263, 652 N.Y.S.2d at 719, 675 N.E.2d at 454. It can reasonably be inferred from plaintiffs' allegations that the relationship between the parties "extended beyond the typical arm's length business transaction." See id. [5]
With respect to Nagelberg, a trier of fact might conclude that Nathan knew and intended that Hayden would communicate his statements to Nagelberg, and may conclude on the facts that Nathan envisioned Nagelberg to be included in those who can reasonably rely on his representations.
Accordingly, the motion to dismiss the claim for negligent misrepresentation is denied.
4. Unjust Enrichment
To state a claim for unjust enrichment under New York law, a plaintiff must plead facts showing that "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." Ashland Inc. v. Morgan Stanley & Co., 652 F.3d 333, 339 (2d Cir. 2011), quoting Diesel Props S.r.l. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 55 (2d Cir. 2011). "The *418 'essence' of such a claim 'is that one party has received money or a benefit at the expense of another.' " Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000), quoting City of Syracuse v. R.A.C. Holding, Inc., 258 A.D.2d 905, 685 N.Y.S.2d 381, 381 (4th Dep't 1999).
Plaintiffs allege that TriPoint received broker fees from its co-defendants in exchange for introducing Hayden and Nagelberg's money into the scheme. Am. Compl. ¶¶ 88, 284. That does not allege unjust enrichment. While what turned out to be a loss for Hayden and Nagelberg was a gain for TriPoint, TriPoint's enrichment was not at plaintiffs' expense.
TriPoint received fees from its co-defendants for services provided to those defendants. Had TriPoint not been paid those fees, TriPoint's co-defendants, and not plaintiffs, would have retained that money. Plaintiffs' financial position would be exactly the same today whether TriPoint was paid the fees or not. Therefore, TriPoint was not enriched at Hayden and Nagelberg's expense.
CONCLUSION
TriPoint's motion to dismiss (Dkt. No. 59) is granted as to the fifth count for aiding and abetting fraud and the seventh count for unjust enrichment, and is denied as to the fourth count for common law fraud and the sixth count for negligent misrepresentation.
So ordered.

Nagelberg introduced the other plaintiffs to Meli and Harriton, following which each invested money in the four entities. Am. Compl. ¶¶ 151-88. All plaintiffs bring claims against Meli, Harriton, and the four entities for fraud and breach of contract. Id. ¶¶ 226-55. At issue in this motion is only Hayden and Nagelberg's claims against TriPoint. Id. ¶¶ 256-88.

If the evidence ultimately shows that TriPoint believed its investigation was adequate to support the statements it made then its statements would not be knowingly false, and the inquiry would turn to whether it should have known that its investigation was inadequate, i.e., negligence.

TriPoint also argues that the fraud claim arises from alleged nondisclosure of a material fact and that plaintiffs must therefore allege facts giving rise to a duty to disclose. However, as discussed, the fraud claim arises from affirmative statements made by TriPoint that plaintiffs allege were false and no special relationship must be alleged to make that claim.

Plaintiffs' own extensive due diligence into Meli, Harriton, and their entities, did not uncover the fraud. See Am. Compl. ¶ 7.

TriPoint also argues that the negligent misrepresentation claim must be dismissed because plaintiffs have not adequately alleged that TriPoint made a representation that it knew was incorrect. But negligent misrepresentation asks whether "the defendant made a false representation that he or she should have known was incorrect." Anschutz Corp., 690 F.3d at 114 (emphasis added).