11-2575-cv
City of Omaha, Neb. Civilian Emps.' Ret. Sys. v. CBS Corp.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2011

(Argued: March 14, 2012                                     Decided: May 10, 2012)

Docket No.  11-2575-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CITY OF OMAHA, NEBRASKA CIVILIAN EMPLOYEES' RETIREMENT SYSTEM,
CITY OF OMAHA POLICE AND FIRE RETIREMENT SYSTEM,

*Plaintiffs-Appellants*,

CITY OF PONTIAC GENERAL EMPLOYEES' RETIREMENT SYSTEM, individually
and on behalf of all others similarly situated,

*Plaintiff*,

v.

CBS CORPORATION, LESLIE MOONVES, FREDERIC G. REYNOLDS, SUSAN C.
GORDON, SUMNER REDSTONE,

*Defendants-Appellees*,

JOSEPH R. IANNIELLO,

*Defendant*.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

B e f o r e:    WINTER, RAGGI, *Circuit Judges*, and RAKOFF, *District Judge*.[*]

---

[*] Judge Jed S. Rakoff of the United States District Court for the Southern District of
New York, sitting by designation.

1

Appeal from a judgment of the United States District Court for the Southern District of New York (P. Kevin Castel, *Judge*) dismissing appellants' amended and second amended complaints for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). Appellants argue that they stated a claim for securities fraud by alleging that the CBS Corporation, and individuals associated therewith, delayed interim impairment testing of the corporation's intangible assets despite indicia that such a test was necessary at an earlier date. We affirm.

J. ALLEN CARNEY (Samuel A. Rudman, Robbins, Geller, Rudman & Dowd LLP, Mellville, New York, *on the brief*), Carney Williams Bates Bozeman & Pulliam PLLC, Little Rock, Arkansas, *for Plaintiffs-Appellants*.

JAMES W. QUINN (Greg A. Danilow, Gregory Silbert, Yehudah L. Buchweitz, *on the brief*), Weil Gotshal & Manges, LLP, New York, New York, *for Defendants-Appellees*.

PER CURIAM:

Plaintiffs City of Omaha, Nebraska Civilian Employees' Retirement System and City of Omaha Police and Fire Retirement System appeal from Judge Castel's dismissal of their amended and second amended complaints for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). The two complaints asserted claims for relief against defendants CBS Corp., Leslie Moonves, Frederic G. Reynolds, Susan Gordon, and Sumner Redstone under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("1934 Act"), see 15 U.S.C. §§ 78j(b), 78t(a), and S.E.C. Rule 10b-5, see 17 C.F.R. § 240.10b-5. We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

Though plaintiffs' 77-page second amended complaint is replete with broad references to misrepresentations regarding CBS's revenue and the value of CBS's assets in early- to mid-2008, the asserted basis for plaintiffs' securities fraud claims is quite limited.[1] On October 10, 2008, CBS announced that it was performing an interim impairment test on its existing goodwill, and that, as a result, CBS expected to incur a non-cash impairment charge during the third quarter of approximately $14 billion. Plaintiffs allege that defendants knew about the facts that led CBS to perform an interim impairment test much earlier than October 2008, so CBS should have performed the test and disclosed its results during the first or second quarter of 2008—that is, no later than June 30, 2008. Thus, plaintiffs submit, defendants' statements about CBS's goodwill and its general financial condition during the first and second quarters of 2008 were knowingly or recklessly false.[2]

We review a judgment of dismissal "de novo, accepting all well-pleaded allegations in the complaint[s] as true and drawing all reasonable inferences in [plaintiffs'] favor." S.E.C. v. Gabelli, 653 F.3d 49, 57 (2d Cir. 2011) (alterations, internal quotation marks, and citation omitted). To survive dismissal, a complaint must "allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'"

---

[1] Because the second amended complaint fails plausibly to allege any false or misleading statements or omissions by defendants, we necessarily conclude that the amended complaint, which contained less detailed factual allegations, was also properly dismissed.

[2] The second amended complaint also appears to allege knowing or reckless omissions by defendants regarding (1) the existence of a repayment covenant linked to the price of CBS stock in a loan obtained by Redstone's holding company, National Amusements, Inc., and (2) declines in advertising revenues at CBS during the first half of 2008. Because such claims are nowhere addressed in plaintiffs' opening brief, we deem them to be waived. See Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir. 1998). Furthermore, with regard to the advertising revenues claim, the second amended complaint makes plain on its face that defendants did disclose such revenue declines during the first and second quarters of 2008.

3

Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC, 595 F.3d 86, 91 (2d Cir. 2010) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). This requires plaintiffs to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). Moreover, complaints of securities fraud are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b) (requiring circumstances constituting fraud to be stated with particularity), and the Private Securities Litigation Reform Act, see 15 U.S.C. § 78u-4(b)(1) (requiring, inter alia, that complaint "specify each statement alleged to have been misleading" and explain why statement is misleading); id. § 78u-4(b)(2) (requiring that facts supporting requisite scienter be pleaded with particularity). See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007).

Applying these principles here, we affirm for substantially the reasons stated in the district court's thoughtful and thorough opinions. See City of Omaha, Neb. Civilian Emps.' Ret. Sys. v. CBS Corp., No. 08 Civ. 10816 (PKC), 2011 WL 2119734 (S.D.N.Y. May 24, 2011); City of Omaha, Neb. Civilian Emps.' Ret. Sys. v. CBS Corp., No. 08 Civ. 10816 (PKC), 2010 WL 1029290 (S.D.N.Y. Mar. 16, 2010). That conclusion is reinforce by Fait v. Regions Fin. Corp., 655 F.3d 105 (2d Cir. 2011), which had not yet been decided at the time of the district court's decisions.

The Fait plaintiffs also claimed that various statements concerning goodwill were false and misleading due to defendants' failure to conduct timely interim impairment testing. Id. at 108, 110. We rejected the argument, reasoning that the "plaintiff's allegations regarding goodwill d[id] not involve misstatements or omissions of material fact, but rather misstatements regarding . . . opinion." Id. at 110 (observing that,

4

"[e]stimates of goodwill . . . are not matters of objective fact."). Relying in part on Virginia Bankshares, Inc. v. Sandberg, 501 U.S. 1083 (1991), we held that in this specific context, a plaintiff must "plausibly allege that defendants did not believe the statements regarding goodwill at the time they made them" to plead a material misstatement or omission. Fait v. Regions Fin. Corp., 655 F.3d at 112.[3] Though Fait involved claims under Sections 11 and 12 of the Securities Act of 1933, see 15 U.S.C. §§ 77k, 77*l*, the same reasoning applies under Sections 10(a) and 20(b) of the 1934 Act, as these claims all share a material misstatement or omission element. See Fait v. Regions Fin. Corp., 655 F.3d at 109; Ashland Inc. v. Morgan Stanley & Co., 652 F.3d 333, 337 (2d Cir. 2011) (reviewing elements of Section 10(b) claims).[4]

In urging otherwise, plaintiffs here, as in Fait, place considerable reliance on the Financial Accounting Standards Board's Statement of Financial Accounting Standards ("SFAS") No. 142, which "requires that goodwill be tested for impairment annually, or 'more frequently if events or changed circumstances indicate that the asset might be impaired.'" Fait v. Regions Fin. Corp., 655 F.3d at 110. Plaintiffs maintain that the second amended complaint contains a number of factual allegations suggesting CBS's general financial deterioration during the first and second quarters of 2008, thereby plausibly demonstrating that proper application of SFAS No. 142 "mandated that Defendants perform an interim test of the value of goodwill" in the first or second quarter of 2008. Appellants' Br. at 11. We are not persuaded.

---

[3] Although defendants' brief relies extensively on our decision in Fait, plaintiffs' reply brief ignores that decision, questioning only whether the Fait district court decision was consistent with Virginia Bankshares. Our affirmance in Fait, relying in part on that very Supreme Court decision, renders this argument untenable.

[4] In light of our decision in Fait, we need not discuss contrary district court decisions cited by plaintiffs. See, e.g., In re Netbank, Inc. Sec. Litig., No. 1:07-CV-2298-BBM, 2009 WL 2432359 (N.D. Ga. Jan. 29, 2009).

As the second amended complaint acknowledges, SFAS No. 142 requires interim goodwill impairment testing only where "events or changes in circumstances . . . indicate that it is more likely than not that the book value of a reporting unit exceeds its fair value."  Second Am. Compl. ¶ 74.  That complaint, however, contains only conclusory statements, not factual allegations, to support plaintiffs' contention that, at some point before October 10, 2008, defendants had knowledge of events or circumstances which would have required them to reach the conclusion that SFAS No. 142's "more likely than not" standard had been met with regard to any of CBS's reporting units — Television, Radio, Outdoor, Publishing, and Interactive.   See generally Ashcroft v. Iqbal, 129 S. Ct. at 1949 (2009); accord Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).  Plaintiffs' allegations regarding the downward trajectory of CBS's overall market capitalization, declining advertising revenues for some CBS reporting units, analysts' expectations regarding the media business environment, and CBS's own anticipation of an economic slowdown may suggest that CBS expressed overly optimistic views regarding its overall business outlook.[5]  But these allegations, even viewed in combination, do not plausibly demonstrate that defendants knew, nor even had reason to know, at any specific time during this period that it was more likely than not that interim impairment testing would reveal that the goodwill of any specific reporting unit was overvalued.

Moreover, even if the second amended complaint did plausibly plead that defendants were aware of facts that should have led them to begin interim impairment testing earlier, such pleading alone would not suffice to state a securities fraud claim after

---

[5] In some respects, plaintiffs' factual allegations seem not even to support this more modest conclusion.  For example, as defendants point out, advertising was not the only source of revenue for CBS's Television Unit.  Indeed, though advertising revenues went down in early- to mid-2008, other Television Unit revenues increased during the same period.

6

Fait. Plaintiffs' second amended complaint is devoid even of conclusory allegations that defendants did not believe in their statements of opinion regarding CBS's goodwill at the time they made them. See Fait v. Regions Fin. Corp., 655 F.3d at 112. In sum, we conclude that plaintiffs here have at most pleaded defendants' failure to comply with Generally Accepted Accounting Principles, rather than their commission of securities fraud, see id., and thus, that plaintiffs' Section 10(b), Rule 10b-5, and Section 20(a) claims against defendants were properly dismissed by the district court.

Finally, we note that the second amended complaint alleges that the market for CBS stock is highly efficient and incorporates into share price all publicly available information. As mentioned briefly above, appellants' complaint alleges two primary indicia as to why CBS should have been aware that impairment testing of its intangible assets was necessary in early 2008. First, they cite the widening gap between CBS's book value and the company's market capitalization, calculated by multiplying the number of outstanding shares by the closing price of the stock. They note that CBS's book value exceeded its market capitalization by $3.2 billion at the end of 2007 and that gap expanded to $8.8 billion at the end of the first quarter of 2008, and that the gap continued to grow until the impairment charge was assessed. In addition, appellants point to the decline in CBS's advertising revenue and various analysts' negative outlook on the advertising market. The allegations concerning advertising revenue are based on market data released by third parties, media reports, and statements made by CBS.[6]

---

[6] Appellants also argue that the amount of the impairment charge itself establishes that CBS should have known that an interim impairment test was necessary. However, a large impairment charge in October 2008 does not explain why CBS should have known that an impairment test was necessary in early 2008, particularly when an impairment test had just been conducted in the fourth quarter of 2007.

Plaintiffs conceded at oral argument that all of the information alleged to constitute "red flags" calling for interim impairment testing—in particular, the difference between CBS's book value and market capitalization, the declines in advertising revenues, and the expectations of analysts regarding the media business's environment—were matters of public knowledge. Also known to the public at pertinent times was that CBS's last impairment test occurred as a part of the 2007 year-end financial reporting, before the appearance of the "red flags." According to the second amended complaint's own allegations, therefore, CBS's market price would at all pertinent times have reflected the need for, if any, or culpable failure to undertake, if any, interim impairment testing. Under those circumstances, the second amended complaint does not allege in a plausible fashion that the market price of CBS stock was inflated by a fraud in failing to undertake interim impairment testing. That being the case, the second amended complaint does not sufficiently allege reliance upon a fraudulently inflated price. See Basic Inc. v. Levinson, 485 U.S. 224, 247 (1988) ("Any showing that severs the link between the alleged misrepresentation and . . . the price . . . will be sufficient to rebut the presumption of reliance. For example, if petitioners could show that the 'market makers' were privy to the truth . . . , and thus that the market price would not have been affected by [the alleged] misrepresentations, the causal connection could be broken: the basis for finding that the fraud had been transmitted through market price would be gone.")

In light of this conclusion, we need not and do not reach defendants' alternative argument regarding scienter.

For the foregoing reasons, the district court's judgment is AFFIRMED.