18-1850-cv
*In re Express Scripts Holdings Co. Sec. Litig.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of May, two thousand nineteen.

PRESENT: BARRINGTON D. PARKER,
DENNY CHIN,
SUSAN L. CARNEY,
*Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

IN RE EXPRESS SCRIPTS HOLDINGS COMPANY
SECURITIES LITIGATION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

TEACHERS INSURANCE & ANNUITY
ASSOCIATION OF AMERICA,
*Lead Plaintiff-Appellant,*

MELBOURNE MUNICIPAL FIREFIGHTERS                    18-1850-cv
PENSION TRUST FUND, individually and on behalf
of all others similarly situated,
*Plaintiff,*

v.

EXPRESS SCRIPTS HOLDING COMPANY, GEORGE
PAZ, TIMOTHY WENTWORTH, ERIC SLUSSER,
DAVID QUELLER, JAMES M. HAVEL,
                    *Defendants-Appellees.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR LEAD PLAINTIFF-APPELLANT:   SALVATORE J. GRAZIANO (Adam D.
                                Hollander, Rebecca E. Boon, *on the brief*),
                                Bernstein Litowitz Berger & Grossmann LLP,
                                New York, New York.

FOR DEFENDANTS-APPELLEES:       SCOTT D. MUSOFF (Jay B. Kasner, *on the brief*),
                                Skadden, Arps, Slate, Meagher & Flom LLP,
                                New York, New York.

Appeal from the United States District Court for the Southern District of

New York (Ramos, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED,**

**ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Lead plaintiff-appellant Teachers Insurance and Annuity Association

("TIAA") appeals from the May 22, 2018 judgment of the United States District Court for

the Southern District of New York (Ramos, *J.*), dismissing its Second Amended

Complaint (the "Complaint"). By opinion and order entered May 21, 2018, the district

court granted the motion of defendants-appellees Express Scripts Holding Company

("Express Scripts"), George Paz, Timothy Wentworth, Eric Slusser, David Queller, and

James M. Havel (collectively, "Defendants") to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6). TIAA sued on behalf of itself and a proposed class of purchasers of Express Scripts common stock between February 24, 2015, and March 21, 2016 (the "Class Period"). The Complaint alleged that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*, by making materially false or misleading statements in connection with the purchase or sale of securities. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

This action stems from Defendants' statements during the Class Period about Express Scripts's relationship with Anthem, Inc. ("Anthem"). In April 2009, Express Scripts and Anthem entered into a ten-year agreement (the "Agreement") for Express Scripts to serve as Anthem's exclusive pharmacy benefits manager, making Anthem its most important customer. Under generally accepted accounting procedures ("GAAP"), the Agreement was an intangible asset and accounting for the Agreement was "based on its useful life to [Express Scripts]," and, under GAAP, Express Scripts was required to update any changes to the Agreement's useful life. App'x at 637 (alterations and internal quotation marks omitted). From 2009 to April 25, 2016, Express Scripts amortized the Agreement over a 15-year period in its filings with the Securities and Exchange Commission ("SEC") because it anticipated renewing the Agreement with Anthem.

Under Section 5.6 of the Agreement, Anthem could engage in a periodic pricing review every three years. Both parties agreed to negotiate any new pricing terms under this section in good faith. The first periodic pricing review took place in 2011, lasted nearly a year, and "placed a substantial strain on Express Scripts's relationship with Anthem." App'x at 644. Anthem initiated the second periodic pricing review in October 2014 and took a "more aggressive" approach, initially demanding nearly $15 billion in total pricing concessions. App'x at 646, 649.

The Complaint alleges that during the Class Period Defendants made several positive statements, discussed further below, about Express Scripts's relationship and negotiations with Anthem. The Complaint further alleges that these statements were false or misleading because in fact both parties had accused each other privately of not proceeding in good faith; Anthem served Express Scripts with two notices of breach; and Express Scripts rejected or failed to respond to Anthem's proposals and refused on a number of occasions to meet with Anthem. On March 21, 2016 -- the last day of the Class Period -- Anthem sued Express Scripts for breaching the Agreement. Express Scripts disclosed the litigation and adjusted its amortization of the Agreement to reflect the assumption that the Agreement would not be renewed beyond its ten-year term.

TIAA's initial complaint was dismissed by the district court without prejudice. On August 30, 2017, TIAA filed the Complaint. The district court thereafter dismissed the Complaint, and this appeal followed.

## STANDARD OF REVIEW

We review *de novo* a district court's grant of a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179 (2d Cir. 2014). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). In addition, when a complaint alleges securities fraud, the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), Pub. L. No. 104-67, 109 Stat. 743 (1995), apply. *See ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009). Rule 9(b) requires that misstatements or omissions be pleaded with particularity, but "plaintiffs need only plead circumstances that provide at least a minimal factual basis for their conclusory allegations of scienter." *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 813 (2d Cir. 1996) (internal quotation marks omitted). The complaint, however, must still "state with particularity facts giving rise to a strong

inference that the defendant acted with the required state of mind." *ECA*, 553 F.3d at 196 (quoting 15 U.S.C. § 78u-4(b)(2)(A)).

## DISCUSSION

On appeal, TIAA argues that the district court incorrectly held that the Complaint failed to adequately allege that Defendants (1) made materially false and misleading statements and omissions; and (2) acted with scienter.

## I.    Applicable Law

Section 10(b) of the Securities Exchange Act of 1934 prohibits "(1) the 'use or employment of any deceptive device,' (2) 'in connection with the purchase or sale of any security,' and (3) 'in contravention of' [SEC] 'rules and regulations.'" *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341 (2005) (alterations omitted) (quoting 15 U.S.C. § 78j(b)). In addition, Rule 10b-5 "forbids, among other things, the making of any 'untrue statement of a material fact' or the omission of any material fact 'necessary in order to make the statements made . . . not misleading.'" *Id.* (quoting 17 C.F.R. § 240.10b–5 (2004)). To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must plead, among other things, "a material misrepresentation or omission" and "scienter." *Id.* (emphasis and internal quotation marks omitted).

**II.     Application**

    **A.     Material Misstatements and Omissions**

TIAA argues that Defendants (1) materially mispresented the state of Express Scripts's relationship and negotiations with Anthem; (2) failed to disclose the true state of Express Scripts's relationship and negotiations with Anthem; and (3) misled investors by amortizing the Agreement over 15 years, rather than 10 years.

    **1.     Statements About the Relationship with Anthem**

Whether a statement is misleading is evaluated not only by the "literal truth" of the statement but also "by [the] context and manner of presentation." *Singh v. Cigna Corp.*, 918 F.3d 57, 63 (2d Cir. 2019) (internal quotation marks omitted).  In addition, a material misstatement must be false at the time it was made. *See San Leandro Emergency Med. Grp.*, 75 F.3d at 812.  Statements are not false or misleading if they "are too general to cause a reasonable investor to rely on them" and "lack the sort of definite projections that might require later correction." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 245 (2d Cir. 2016) (internal quotation marks omitted).  Moreover, "[d]isclosure of an item of information is not required . . . simply because it may be relevant or of interest to a reasonable investor." *Resnik v. Swartz*, 303 F.3d 147, 154 (2d Cir. 2002).

TIAA identifies four statements that it argues are materially false or misleading: (1) on a February 25, 2015 conference call, Queller described the Express Scripts-Anthem relationship as "great," "very, very solid," and "business as usual,"

App'x at 654-55; (2) on an April 29, 2015 conference call, Paz stated that Express Scripts "really enjoys" its relationship with Anthem and it is a "two-way street," App'x at 658; (3) on December 22, 2015, Paz stated that Express Scripts was "currently in discussions with Anthem regarding the periodic pricing provisions of the [A]greement," and "excited to continue productive discussions," which were "very early on," App'x at 674; and (4) on February 16, 2016, Defendants stated in an SEC filing that it was "actively engaged in good faith discussions with Anthem" regarding the periodic pricing review, App'x at 686. TIAA argues that these statements were misleading because of the state of the negotiations between Express Scripts and Anthem. We conclude that the district court correctly held that no reasonable investor could have found the statements, in light of the overall context, to be false, misleading, or incomplete.

First, the statements that the relationship was "great" and "very, very solid" and Express Scripts "really enjoys" the relationship are expressions of puffery and optimism, and are the opinions of Paz and Queller. "[E]xpressions of puffery and corporate optimism do not give rise to securities violations," *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004), and "[a]n opinion statement . . . is not necessarily misleading when an issuer knows, but fails to disclose, some fact cutting the other way," *Omnicare, Inc. v. Laborers Dist. Council Consts. Indus. Pension Fund*, 135 S. Ct. 1318, 1329 (2015).

Second, it is clear from the Complaint and the documents it references that Express Scripts was trying to negotiate a new agreement and maintain its relationship

with Anthem throughout the Class Period.  In fact, in January 2016, Anthem's CEO stated that it had just "set the table now for conversations in and around the possibility of recasting our pricing relationship with [Express Scripts]."  App'x at 553.  Moreover, Express Scripts met with Anthem on February 3, 2016, and submitted a proposal on February 12, 2016, and Anthem's general counsel stated on January 12, 2016, that the companies "remain[ed] in dialogue."  App'x at 568.  Hence, discussions were in fact ongoing, and Defendants statements "suggest only the hope . . . that the talks would go well" and "did not become materially misleading when the talks did not proceed well." *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993).  Moreover, while Express Scripts received notices of breach prior to these statements, the companies were also continuing to engage in the Agreement's three-step dispute resolution process throughout the Class Period in an effort to resolve their differences.  Finally, during the Class Period, Express Scripts made a number of statements acknowledging the possibility that negotiations could fail and the Agreement would not be renewed.

Accordingly, considering "not only [the] literal truth" of the statements, "but [also the] context and manner of presentation," *Singh*, 918 F.3d at 62, the district court correctly held that no reasonable investor would find these statements false, misleading, or incomplete.

### 2. Duty to Disclose

TIAA argues that Defendants had a duty to disclose Express Scripts's dispute with Anthem and the uncertainty as to the relationship between the two companies. We are not persuaded. "[A] pure omission is actionable under securities laws only when the corporation is subject to a duty to disclose the omitted facts, [a]nd in and of themselves, [Section] 10(b) and Rule 10b-5 do not create an affirmative duty to disclose any and all material information." *In re Vivendi*, 838 F.3d at 239 (internal quotation marks and citations omitted). TIAA essentially argues that Defendants should have anticipated the outcome of the negotiations sooner or that the negotiations would deteriorate, but in the circumstances here, where the discussions were ongoing, Defendants did not have a duty to disclose more about the uncertain state of the negotiations. *See Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 53 (2d Cir. 1995) ("[D]efendants' lack of clairvoyance simply does not constitute securities fraud.")

### 3. Express Scripts's Accounting Treatment of the Agreement

Express Scripts amortized the Agreement over a 15-year period, anticipating that the Agreement would be renewed, and therefore useful to Express Scripts, for five years beyond the ten-year contract period. TIAA argues that "renewal was increasingly unlikely" throughout the Class Period because of the "contentious, unresolved disputes," and therefore Express Scripts was obligated under GAAP to amortize the Agreement over its existing ten-year life. Appellant's Br. at 33-34. While

Express Scripts's expectation as to the Agreement's useful life was arguably "overly optimistic," TIAA's allegations, "even viewed in combination, do not plausibly demonstrate that defendants knew, nor even had reason to know, at any specific time during [that] period that [the Agreement] was overvalued." *City of Omaha, Neb. Civilian Employees' Ret. Sys. v. CBS Corp.*, 679 F.3d 64, 68 (2d Cir. 2012) (per curiam). Anthem and Express Scripts continued to engage in discussions throughout the Class Period, and Anthem did not inform Express Scripts until April 2017 -- after the Class Period -- that Anthem did not intend to renew the Agreement. Accordingly, this accounting treatment was not materially misleading or false.

## B. Scienter

Evening assuming that TIAA plausibly alleged that Defendants made materially false or misleading statements or omissions, its Section 10(b) and Rule 10b-5 claims fail because TIAA has failed to sufficiently allege scienter.

Scienter is a wrongful state of mind -- *i.e.*, "an intent to deceive, manipulate or defraud." *Ganino v. Citizens Utils Co.*, 228 F.3d 154, 168 (2d Cir. 2000). "A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). "The requisite scienter can be established by alleging facts to show . . . strong circumstantial evidence of conscious misbehavior or recklessness." *ECA*, 553 F.3d at

198. Scienter based on conscious misbehavior or reckless conduct may be established with circumstantial evidence that the defendants "knew facts or had access to information suggesting that their public statements were not accurate." *Employees' Ret. Sys. of Gov't of the V.I. v. Blanford*, 794 F.3d 297, 306 (2d Cir. 2015). This Court, however, has limited the scope of securities fraud liability based on reckless conduct. Plaintiffs cannot proceed with "allegations of fraud by hindsight"; allegations of GAAP violations alone are not sufficient; and "as long as the public statements are consistent with reasonably available data, corporate officials need not present an overly gloomy or cautious picture of current performance and future prospects." *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) (internal quotation marks omitted).

TIAA identified eight categories of facts it alleges demonstrate a strong inference of scienter. *See Novak*, 216 F.3d at 309.[1] These facts do not, however, provide strong circumstantial evidence of misbehavior or recklessness, because Defendants' statements were consistent with the facts and information available at the time. *See id*. As the allegations of the Complaint and the content of the relevant documents make clear, Defendants could not have known that the negotiations with Anthem would

---

[1]    TIAA's categories of facts include: (1) Defendants' personal involvement in the Anthem relationship; (2) the size and protracted nature of the dispute; (3) Defendants holding themselves out to the public as being personally involved in the negotiations; (4) the Agreement being part of Express Scripts's core operations; (5) Anthem's statements about its $15 billion demand; (6) the irreparable damage from the first round of pricing negotiations; (7) Anthem's accusation that Express Scripts breached the Agreement's operational terms; and (8) Defendants' own subsequent admissions.

ultimately fail, especially considering the fact that the first periodic pricing review was successful even though it took "approximately a year," was "combative," and led Anthem to "raise[] the possibility of litigation" to resolve the contractual dispute. App'x at 642-44. The fact that Defendants' optimism "turned out to be unwarranted is not circumstantial evidence of conscious fraudulent behavior or recklessness." *Rothman v. Gregor*, 220 F.3d 81, 90 (2d Cir. 2000). Much of what TIAA alleges is "fraud by hindsight," but Defendants "need not be clairvoyant." *Novak*, 216 F.3d at 309. Allegations, like these, "that defendants should have anticipated future events and made certain disclosures earlier than they actually did do not suffice to make out a claim of securities fraud." *Id*.

\* \* \*

We have considered TIAA's remaining arguments and conclude they are without merit. Accordingly, we **AFFIRM**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk